DUNCAN et al. v. BURKDOLL.

No. 34156. May 29, 1951.

*232 P. 2d 151.*

Judson H. Pierce, Perry, for plaintiffs in error.

McCollum & McCollum, Pawnee, for defendant in error.

O'NEAL, J. This is an appeal from a judgment of the district court of Pawnee county, canceling of record a caveat, and quieting title to the south half of the southeast quarter of section 15; the north half of the northeast quarter of section 22, and the northwest quarter of section 23, township 21 north, range 6 E.I.M., in Pawnee county, in defendant in error, Loyd Burkdoll.

On and prior to September 4, 1946, William G. Duncan, sometimes referred to in the record as W. G. Duncan, and Fannie R. Duncan, were husband and wife. October 1, 1903, William G. Duncan acquired title by patent from the United States to the south half of the southeast quarter of section 15 and the north half of the northeast quarter of section 22, above referred to. The other tract of land, the northwest quarter of section 23, less 3 1/3 acres deed-

ed to the State of Oklahoma for highway purposes, was acquired by William G. Duncan and Fannie R. Duncan, husband and wife. The title thereto was taken in the name of William G. Duncan and Fannie R. Duncan. About September 4, 1943, defendant in error procured a deed signed by W. G. Duncan and Fannie R. Duncan conveying the above described land to him. He paid therefor the sum of $6,400. By the deed W. G. Duncan and Fannie R. Duncan reserved to themselves, their heirs and assigns, 1/16th of all oil and gas produced from said land for a period of eighteen years. Fannie R. Duncan died on or about November 16, 1946, leaving surviving her, her husband, William G. Duncan and two sons, M. G. Duncan, also known as Morris Duncan, and Harve Duncan. The $6,400 paid for said land by Loyd Burkdoll was deposited in the First National Bank of Pawnee, Oklahoma, to the account of "W. G. Duncan or Fannie Duncan, both, or either, right of survivorship." Out of this $6,400 W. G. Duncan bought another farm of 160 acres and paid therefor the sum of $4,000. W. G. Duncan and Fannie R. Duncan moved to the new farm about February 1, 1944. Harve Duncan, who was married, and his family moved with them. Morris Duncan was then in the Army. When he returned from the Army in 1945 he went to the home of his father and mother and continued to live with them, on the new farm, until the death of his mother in 1946. March 5, 1948, there was filed for record and recorded in the office of the county clerk of Pawnee county, Oklahoma, an affidavit executed March 4, 1948, by W. G. Duncan, which, among other things, stated that the deed from W. G. Duncan and Fannie R. Duncan to Loyd Burkdoll was never acknowledged, in that said deed was signed by Fannie R. Duncan at her home and that Mr. C. C. Roberts, the notary public before whom the deed appears to have been acknowledged by Fannie R. Duncan, did not come to see Fannie R. Duncan, nor talk to her over the telephone; that she never acknowl-edged the deed in question, or any deed conveying the property to Mr. Burkdoll.

March 15, 1948, this action was commenced by Loyd Burkdoll against W. M. Duncan, one and the same person as Morris Duncan, and W. G. Duncan, to cancel of record said affidavit and to quiet the title to said property in plaintiff, Loyd Burkdoll, and for an injunction. In his petition Burkdoll, among other things, alleged that the statement in said affidavit to the effect that said deed was not signed nor acknowledged by Fannie R. Duncan is untrue; that said W. G. Duncan, at the time he signed said affidavit, was about 85 years of age, confined to his bed, quite feeble and hard of hearing; that it is doubtful whether said W. G. Duncan fully knew or understood the nature of said affidavit, but if he did know and understand the contents of said affidavit, he was induced to sign the same by his son, W. M. Duncan.

Defendants filed an answer consisting of a general denial. Thereafter, W. M. Duncan filed his separate amended answer and cross-petition. In this amended answer, W. M. Duncan denies generally all the allegations of plaintiff's petition, except such as were therein specifically admitted. It admitted the execution and filing of the caveat affidavit, but stated that it is a bona fide instrument and was entitled to be filed in order to prevent alienation of the land in question. In his cross-petition he joins his brother, Harve Duncan, as cross-petitioner, and also makes himself, as administrator of the estate of Fannie R. Duncan, deceased, a cross-petitioner. W. G. Duncan, or William G. Duncan, did not appear or join in the amended answer, or the cross-petition.

The cross-petition alleges, in substance, that W. G. Duncan and Fannie R. Duncan acquired the title to the south half of the southeast quarter of section 15 and the north half of the northeast quarter of section 22 in town-

ship 21 north, range 6 east of the I. M., by patent from the United States, dated October 1, 1903; that at the time of the acquisition thereof, W. G. Duncan and Fannie R. Duncan were husband and wife, and that they remained husband and wife until the date of the death of Fannie R. Duncan, November 6, 1946; that they occupied said premises as their homestead down to the date of the transfer thereof to Loyd Burkdoll; that W. G. Duncan and Fannie R. Duncan acquired the other tract of land by warranty deed dated April 11, 1932; that during August, 1943, Fannie R. Duncan, who was past 80 years of age, suffered two strokes of paralysis which rendered her bedfast, completely physically and mentally disabled; that shortly before August 4, 1943, Burkdoll and his father started negotiations with W. G. Duncan for the purchase of said premises, and that no attempt was made to obtain the consent of Fannie R. Duncan; that on or about the 4th day of September, 1943, Burkdoll, or his agent, prepared the deed in question and brought it to the home of Fannie R. Duncan to obtain her signature; that at the time Fannie R. Duncan was bedfast suffering from paralysis; that she was carried from her bed and placed in a rocking chair and the deed was placed upon a book in her lap, and that thereupon the agent of Burkdoll produced a lead pencil and with his aid Fannie R. Duncan signed the deed; that later in the same day the same agent of Burkdoll returned to the home of Fannie R. Duncan and announced that the instrument was not acceptable because of the purported signature of Fannie R. Duncan being in pencil, and requested that Fannie R. Duncan be again assisted from her bed so he could have her sign. Whereupon Fannie R. Duncan in the same manner signed the deed with pen and ink; that she never appeared before any notary public and never acknowledged the execution of said deed, and that during all that time said Fannie R.

Duncan was mentally incompetent to sign said deed, and that she never understood or was aware of said transaction in any of its phases, and that she never knew she had signed an instrument conveying said property, and that she received or accepted no consideration from said Burkdoll for said property, or any part thereof; that said Fannie R. Duncan was bodily moved from said homestead on or about February 8, 1944, without her knowledge or consent, thereby involuntarily and without her knowledge allowing plaintiff, Burkdoll, to enter into possession of said premises.

Prayer was for the cancellation of said deed and a judgment barring and enjoining plaintiff, Burkdoll, from asserting or claiming any right, title, or interest in said property, and for an accounting for the rents and profits derived from said lands.

Plaintiff, Burkdoll, filed a verified answer to the cross-petition consisting of a general denial, and further alleged the manner in which he acquired title to said land and specifically denied that he ever did, by agent or otherwise, participate in the procurement of the signature of Fannie R. Duncan, and specifically denying any fraud in the transaction, and specifically denying that Fannie R. Duncan was physically or mentally incompetent to make, execute and deliver said deed, and alleging that she was duly capable of knowing the full nature of said transaction.

The issues thus joined were tried to the court without a jury resulting in findings of fact to the effect that there was no evidence in the record of any fraud practiced by Burkdoll, and that he was guilty of no fraud whatever, and the finding that while Fannie R. Duncan was somewhat weakened in mind, she was not without understanding so as to know and understand the nature and effect of the transaction,

and that she was not mentally incompetent to make and execute the deed in question.

The court concluded, as a matter of law, that as to the 160 acres of land owned entirely by W. G. Duncan, neither Harve Duncan, nor Morris Duncan, individually, nor Morris Duncan, as administrator of the estate of Fannie R. Duncan, would have any interest therein even if the deed were canceled, and that having no interest therein they may not maintain this suit as to such land. The court further concluded that no offer to rescind was ever mentioned in the pleadings, and no tender was ever made until after the close of the evidence, and then only orally, and that the same, if sufficient, came too late.

Decree was for the cancellation of the affidavit of record and quieting title to the land in question in plaintiff, Loyd Burkdoll, subject, however, to the rights of the parties as to the reservation of the oil and gas interest contained in said deed.

After unsuccessful motion and supplemental motion for new trial, W. M. Duncan, individually, and as administrator of the estate of Fannie R. Duncan, deceased, and Harve Duncan appeal.

There are six assignments of alleged error. All but the first and the fourth go to the question of the sufficiency of the evidence to sustain the decree.

The first assignment is that the court erred in overruling the motion and supplemental motion of plaintiffs in error for a new trial.

The fourth assignment is that the court erred in admitting incompetent evidence on the part of plaintiffs in error.

The plaintiffs in error in their brief do not point out any evidence on the part of defendant admitted by the court which they claim is incompetent. That assignment of error must be treated as having been abandoned. In their brief, plaintiffs in error assert, and the record shows, that the sole and only question to be considered is whether or not Fannie R. Duncan was, at the time she joined in the execution of the deed in question, mentally competent so to do.

The trial court in the findings of fact carefully reviewed and analyzed the evidence. There is little we can add to such review and analysis. The court pointed out that the evidence shows that in 1943, W. G. Duncan, being desirous of selling the land, employed one John Kirby, a real estate broker, as his agent; that Kirby contacted Loyd Burkdoll who agreed to purchase the land for $6,400 upon approval of the title; that Kirby and W. G. Duncan had the deed prepared by an attorney, Mr. W. Lee Johnson, and that W. G. Duncan took the deed so prepared and signed it, and had his wife, Fannie R. Duncan, sign the same; that Harve Duncan, one of the plaintiffs in error herein, and his wife were present at the time and assisted in procuring the pen and ink for the signatures. (It may here be noted that the evidence shows that Harve Duncan and his wife also aided in assisting Fannie R. Duncan from her bed to the rocking chair just before she signed the deed.) The court also pointed out that the evidence shows that although the deed bears the certificate of a notary public, Fannie R. Duncan did not acknowledge the deed personally, but that W. G. Duncan took the deed to the notary public and acknowledged it; that the deed was then delivered with the abstract and W. G. Duncan drew a draft on Burkdoll for $6,400 which was paid upon approval of the title, and W. G. Duncan deposited the $6,400 in the bank in the name of himself and his wife, as joint tenants with right of survivorship; that shortly thereafter, W. G. Duncan used approximately $4,000 of the money to purchase another farm onto which he and his wife moved and resided until her death; that the excess of the $6,400 over the $4,000 expended

for the new place was expended by W. G. Duncan in providing food, clothing and medical expenses for himself and wife. (Here it may be stated that the record shows that W. G. Duncan also provided, in part, for food and medical expenses for Morris Duncan and Harve Duncan and his family. Harve Duncan with his family have lived with his father and mother at the new farm ever since its purchase, and Morris Duncan has lived there since his return from the Army in June, 1945.) The court further pointed out that this suit was commenced March 15, 1948, to cancel the affidavit, and W. G. Duncan did not file any pleadings and is in default; that the other defendants, in addition to their plea of fraud on the part of Burkdoll, pleaded that Fannie R. Duncan was mentally incapable of making the conveyance. The trial court found that $6,400 was the reasonable value of the land at the time of the sale.

The court then found:

"The principal question is whether Fannie R. Duncan was merely mentally incompetent or whether she was a person wholly without understanding. In this regard I think the evidence, while slightly in conflict, preponderates in favor of the view, that while she was of weakened mind, she was not wholly without understanding and I believe when she executed· the deed she knew she and her husband were selling the farm."

The court then concluded, as a matter of law, that as to the land owned by W. G. Duncan and Fannie R. Duncan, the deed to Burkdoll was not void.

Going back to the evidence as to the mental capacity of Fannie R. Duncan, the trial court found:

"She was aged and had suffered a stroke. While the Doctor testified that he did not know whether she would have understood she was signing a deed or not and that he doubted her ability, yet, he testified that on some days she was lucid and able to understand, and of course he did not know whether it was a lucid day on which she signed or not. In addition, the Doctor's answer to my direct question, was that she was not an idiot but that she had some mental ability at all times."

There was but one expert witness, Dr. Charles L. Haddox. He testified that he had known Fannie R. Duncan in her lifetime for 25 or 30 years; that he had treated her for the last four or five years; that in March, 1943, she suffered a slight stroke which seemed to slightly affect her mentally at the time, and affected her ability to walk. The evidence further shows that on or about August 2, 1943, while Fannie R. Duncan was visiting relatives in Arkansas City, Kansas, she suffered a severe stroke of paralysis. She was brought to her home and Dr. Haddox treated her from time to time until her death in 1946; that in addition to the paralytic stroke, she was suffering from a kidney ailment, Bright's disease. Dr. Haddox testified that she would have lucid intervals when she would talk rationally, but generally she talked about things in the past. It was pointed out to Dr. Haddox that the deed was signed by Mrs. Duncan on September 4, 1943. When asked as to whether she realized at that time what she was doing, he stated that he did not know, and that he did not see her on that particular day. The evidence is that Dr. Haddox did not see her for several days before that date and for several days thereafter. He testified that he was unable to give an opinion of her mental capacity on that day for the reason that she had lucid intervals and some bad days. He stated several times that he did not see Fannie R. Duncan on September 4, 1943, and could not testify as to her mental capacity on that day.

The trial court, by way of comment on the weight of the evidence, said:

"It seems strange to me that Harve, who was present when the deed was signed on September 4, 1943, did not complain until 1948 and never at any time notified Burkdoll of his mother's incompetency."

It is well settled that in actions of this nature, that is, for the cancellation of a deed for lack of mental capacity on the part of the maker, the presumption is that a person shown to have executed the deed had mental capacity so to do. 32 C.J. 786.

In this case the trial court found and held that plaintiffs in error have failed to prove by a preponderance of the evidence that Fannie R. Duncan was mentally incapable to execute the deed in question. From the record as a whole, it cannot be said that the finding and decree of the trial court are clearly against the weight of the evidence. In actions of this nature, the findings and decree of the trial court will not be disturbed on appeal unless the same are clearly against the weight of the evidence.

Affirmed.