Lula ARMSTRONG and Mary Nickerson, incompetent persons, appearing by their brother and next friend, Albert Armstrong, Plaintiffs in Error,

v.

Jaroy ANDERSON, Defendant in Error.

No. 41193.

Supreme Court of Oklahoma.

May 31, 1966.

Rehearing Denied July 26, 1966.

Erwin & Erwin, Chandler, for plaintiffs in error.

Willis R. Stark, Jones, for defendant in error.

LAVENDER, Justice.

Plaintiffs in error, Lula Armstrong and Mary Nickerson, were plaintiffs in the trial court and will be referred to herein as plaintiffs. Defendant in error, Jaroy Anderson, was the defendant in the trial court and will be referred to herein as the defendant.

Plaintiffs' petition alleged that the plaintiff Lula Armstrong is past 79 years of age, and the plaintiff Mary Nickerson is past 77 years of age, and they are now being nursed and cared for in a rest home in Oklahoma City; that the defendant is a nephew of the plaintiffs and has had considerable business experience; that on January 9, 1963, and for many years prior thereto, plaintiffs were the owners, in possession, of Lots 5 and 6 in Block 2 of Webster Addition to Oklahoma City, upon which there is a four and five-room modern frame duplex and a 12x24 concrete block two-room modern apartment, all reasonably worth $20,000.00 or more; that, under date of January 9, 1963, the defendant obtained

a warranty deed from the plaintiffs covering such property, and such deed has been filed and recorded in the office of the County Clerk of Oklahoma County, Oklahoma. The defendant's answer admitted the foregoing allegations but denied, generally, the balance of the allegations of the petition: That, on the date of said deed and for some time prior thereto, the plaintiffs were "mentally incompetent" and "incapable of managing and conducting their business affairs;" that the defendant knew and had notice of "said incompetency" of the plaintiffs; that the defendant paid no consideration to the plaintiffs for said deed; that said deed should be cancelled and set aside "for lack of competency of the grantors and for failure of consideration;" that, being personally acquainted with the plaintiffs and knowing their mental condition, there was a confidential relationship, and the defendant had their trust and confidence but violated the same by wrongfully, unlawfully and fraudulently obtaining their signatures to said deed for the purpose of defrauding and depriving them of their property described in the deed; that the defendant was guilty of oppression, fraud and malice toward the plaintiffs; and that by reason of the foregoing facts plaintiffs have been actually damaged in not less than the sum of $1,000 and are further entitled to recover punitive or exemplary damages from the defendant in the sum of $5,000.00.

The issues presented by these pleadings were tried to the court, without a jury, and judgment thereon was for the defendant, refusing to cancel the deed and dismissing the plaintiffs' claim for damages. Plaintiffs' motion for a new trial was overruled, and they perfected this appeal.

Plaintiffs argue all of their assignments of error under two related propositions:

First, that the plaintiffs' evidence was sufficient to establish their cause of action for cancellation of the deed; and

Second, that the plaintiffs' preliminary evidence that the deed was obtained from "feeble-minded" relatives by a person occupying a confidential relationship to them, without adequate consideration, raised a presumption of fraud and undue influence and shifted the burden to the grantee-defendant to establish absolute fairness and that no advantage was taken of the grantor-plaintiffs, which burden of proof the defendant failed to sustain.

In their briefs, plaintiffs raise no question concerning their claim for damages but ask only that the judgment be reversed and the trial court be directed to render judgment for the plaintiffs, cancelling the deed, and for costs. Therefore, we shall consider only the matter of the cancellation of the deed.

As we view the plaintiffs' petition, it prays for cancellation of their deed to the defendant on two different theories: (1) that the plaintiffs were mentally incompetent to make a valid conveyance of their property; and (2) that a confidential relationship existed between the plaintiffs, whose minds were weakened by age and sickness, and the defendant, their nephew, and that he obtained the deed from them without any consideration therefor by taking advantage of their trust and confidence in him and of their weak minds, thus obtaining the deed by fraud or undue influence.

Plaintiffs' second proposition applies only to their second theory above, involving fraud and undue influence. The legal basis of their argument under their second proposition is best illustrated by their quotation of the syllabus to the case of Owens et al. v. Musselman, 190 Okl. 199, 121 P.2d 998:

"Fraud and undue influence will not be presumed but ordinarily must be proven by clear, cogent and convincing testimony. However, where fraud and undue influence are alleged and facts sufficient to show inadequacy of consideration *and* a confidential relationship are proven, the one occupying such a position of confidence will be required to go forward and make a full and complete disclosure showing absolute good faith and that there was no fraud or

undue influence practiced in a transaction between the parties." (Emphasis supplied)

The plaintiffs herein did allege fraud and undue influence, so, if they proved facts sufficient to show inadequacy of consideration *and* a confidential relationship between the plaintiffs and the defendant, the burden would have shifted to the defendant to make a full and complete disclosure showing absolute good faith and that there was no fraud or undue influence practiced by him or on his behalf in this deed transaction, and the question of whether or not he had sustained that burden of proof would be presented. However, if the plaintiffs did not prove facts sufficient to show inadequacy of consideration *and* a confidential relationship, the rule of Owens et al. v. Musselman, supra, would not be applicable, and the plaintiffs would be required to prove fraud or undue influence practiced by or on behalf of the defendant in procuring the conveyance in question, by clear, cogent and convincing evidence, in order to justify cancellation of such conveyance on the ground of fraud or undue influence.

Plaintiffs' evidence wholly failed to show any deceit or misrepresentation or any other act of fraud, or any undue influence, menace, duress, or mistake practiced by or on behalf of the defendant in connection with the deed transaction in question. Their case, under their second theory above, must be and is bottomed upon the fact that the defendant is their nephew. It is argued, in substance and effect, that because the defendant was a nephew of the plaintiffs they reposed trust and confidence in him, giving rise to a confidential relationship between them. However, neither of the plaintiffs testified, or even appeared, at the trial, and no other witness for the plaintiffs testified that either of the plaintiffs reposed any particular trust or confidence in the defendant. Thus, their case, under their second theory above, depends upon the application of the above-quoted rule of Owens et al. v. Musselman;

and the application of that rule in this case depends upon the kinship between aunt and nephew establishing a confidential relationship between them.

In a similar situation, involving an attempted cancellation of a deed from an uncle to two nephews, this court has held that the mere existence of kinship, whether by affinity or consanguinity, does not necessarily give rise to a confidential relationship; and that the validity or invalidity of a deed from one kin to another depends upon whether there actually was a confidential relationship between them and whether or not such relationship was abused. Phillips, Admx. v. Phillips et al., Okl., 395 P.2d 803.

The plaintiffs did not prove facts sufficient to show the existence of a confidential relationship between the plaintiffs and the defendant. Therefore, the rule of Owens et al. v. Musselman, supra, did not come into play, and the burden of proving fraud or undue influence, by clear, cogent and convincing evidence, remained with the plaintiffs. They completely failed to sustain that burden, and the trial court would not have been justified in cancelling their deed to the defendant on their second theory, fraud and undue influence.

Concerning the mental capacity involved in the plaintiffs' first theory, this court said in Tate v. Murphy, 202 Okl. 671, 217 P.2d 177, 185, 18 A.L.R.2d 892:

"This court has often announced the test of a person's ability to make a valid deed or contract. The rule is announced in an early case, Miller v. Folsom, 49 Okl. 74, 149 P. 1185, as follows: 'The test of capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting. To invalidate a deed it must appear that the grantor was incapable of comprehending that the effect of the deed, when made, executed and delivered would be to divest him of the title to the land set forth in the deed.'

"In Scott v. Scott, 131 Okl. 144, 268 P. 245, 247, it is stated: 'The test of capacity to make a deed is that the grantor should have the ability to understand the nature and effect of the act in which he is engaged, and the business he is transacting. He may be old; he may be enfeebled by disease; he may be erratic, irritable, and changeable in his views; he even may be irrational upon some topics, but, in the absence of fraud, he may still execute a valid deed.'

"In the more recent case of Antle v. Hartman, 193 Okl. 524, 145 P.2d 756, it is said: 'Fragmentary evidence of isolated instances indicating failing memory was insufficient to overcome evidence that grantor was mentally competent at time of executing deed.'

"In the first syllabus of Marten v. Wagner, 198 Okl. 273, 178 P.2d 618, the importance of mental condition at the time when a conveyance is made is announced as follows: 'The test of capacity to make a deed or conveyance is that grantor shall have ability to understand nature and effect of the act at time conveyance is made.'

"In 26 C.J.S. Deeds § 208, sub-section (b), we find the following statement: 'To justify the setting aside of a deed for mental incapacity, the evidence must be sufficient to show that grantor was so lacking in mental ability that he could not reasonably exercise judgment and discretion in regard to the particular business at hand. Such incapacity must ordinarily be established by a preponderance of the evidence, or by clear, satisfactory, and convincing evidence.' "

■ In an action to cancel a deed conveying real property for lack of mental capacity on the part of the maker, the presumption is that the maker of the deed had mental capacity to execute the same; and the burden of proof is upon the party attacking the validity of the deed. Wills et al. v. Dissing, Okl., 356 P.2d 339; Duncan et al. v. Burkdoll, 204 Okl. 574, 232 P.2d 151.

The deed in question herein, from the plaintiffs, as grantors, to the defendant, as grantee, is dated January 9, 1963. It contained the following provision:

"And the said parties of the 1st part hereby expressly reserve to themselves and their assigns, the full benefit and use of the above described premises and all the rents, issues and profits thereof, for and during their natural lives."

The plaintiffs made no personal appearance at the trial, except through their brother, Albert Armstrong, as next friend. At the time of the trial, he was plaintiffs' only living brother. He testified that in the summer and fall of 1962 they were not, in his opinion, competent to transact their business or capable of doing anything, and that they got worse thereafter.

Callie Moore, the daughter of a deceased sister of the plaintiffs, testified that after April of 1962 they were not competent to transact business and were always incompetent after that time.

Corrine D. Armstrong, widow of Isaac Armstrong, a brother of the plaintiffs who had died some time during the period between the execution of the deed involved herein and the trial, testified that, in her judgment, the plaintiffs were not able to take care of their business, or competent to take care of their accounts, and did not understand the effect of a deed.

■ None of these three witnesses testified about the mental condition of the plaintiffs at the time of the execution of the deed in question. These statements, of course, were conclusions of lay persons, and, insofar as facts testified to by them are concerned, were supported by facts which, at most, would show only that the plaintiffs' minds would wander, and that they were forgetful. Their testimony does not approach meeting the requirements set forth in Tate v. Murphy, supra, for cancelling a deed for lack of mental capacity of the grantors to make a valid deed.

By stipulation of the parties, a letter dated March 16, 1964, signed by James A.

Cox, Jr., M.D., and addressed to the attorneys of record for the plaintiffs, was received in evidence in lieu of his testimony. It reads as follows:

"This is to certify that Mrs. Lula Armstrong has been treated by me since December 13, 1957. She was hospitalized at Coyne Campbell Sanitarium August 3, 1962 with a diagnosis of Chronic Brain Syndrome due to cerebral arteriosclerosis. It was my opinion at that time that she was mentally incompetent. This state has progressed and her mental condition has slowly deteriorated.

"Mrs. Mary Nickerson has been attended by me since July 9, 1954. She was hospitalized at the University Hospital for Hypertensive Encephalopathy in 1954. I feel that while she has not been incompetent as has been the case of Mrs. Lula Armstrong, her judgment has been poor and her ability to be influenced adversely has increased. She has generalized arteriosclerosis and there have been senile brain changes as a result.

"These two women, because of their incapacities and disabilities were, upon my advice, admitted to a local nursing home in July and August of 1963 where they could be cared for adequately."

There is no explanation of the medical terms used in this letter, or as to what extent the medical or mental situation described by such terms would affect the ability of either of the plaintiffs to understand the nature and effect of their deed to the defendant at the time of the execution of such deed. These statements are not clear, satisfactory, or convincing enough to meet the requirements set forth in Tate v. Murphy, supra, for cancelling a deed for lack of mental capacity of the grantors to make a valid deed.

 Although not necessary to the cancellation of a deed on the ground of mental incapacity of the grantor to make a valid deed, the plaintiffs did plead "failure of consideration," which, in the circumstances presented, we construe as a plea of want of consideration. Concerning consid-

eration, 15 O.S:1961, Sec. 114' provides that "A written instrument is presumptive evidence of a consideration." And 15 O.S. 1961, Sec. 115 provides that "The burden of showing a want of consideration * * * lies with the party seeking to invalidate or avoid it." The plaintiffs made no attempt to prove that the defendant did not pay to the plaintiffs the consideration recited in the deed they seek to cancel. Although the matter of inadequacy of consideration is involved in the plaintiffs' second theory, it is not involved in this theory.

It is our opinion that the plaintiffs did not prove sufficient facts to justify cancellation of their deed to the defendant, and that the judgment of the trial court should be affirmed.

Judgment affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN and BERRY, JJ.

HODGES, J., dissents.