In the Matter of the Determination of Death and Termination of Joint Tenancy of Florence WOODWARD, Deceased.

Ruth SEAY et al., Appellants,

v.

L. E. ROSS et al., Appellees.

No. 47568.

Supreme Court of Oklahoma.

April 27, 1976.

Philip R. Campbell, Tulsa, for appellants.

John K. Harlin, Jr., Tulsa, for appellees.

Robert J. Woolsey, Tulsa, amicus curiae for Daniel W. Ross.

BERRY, Justice.

Appellees [Ross brothers] filed petition on October 4, 1972, to judicially determine death of Florence Woodward [Florence] and terminate joint tenancy. The joint tenancy was created by warranty deed conveying 120 acres, dated May 20, 1958, between Florence as grantor and Florence and Ross brothers as grantees.

Appellants [Ross sisters] filed cross-petition to set aside joint tenancy deed on grounds of fraud, undue influence, and lack of mental capacity.

Ross brothers filed demurrer on ground statute of limitations had expired. Trial court overruled demurrer. Answer was then filed denying generally and specifically all allegations contained in cross-petition.

Following trial of case to court, judgment was entered for Ross brothers, upholding validity of deed and terminating joint tenancy. Ross sisters perfect this appeal.

The record discloses that Florence lived for many years on her 120 acre farm near Vera, Oklahoma. She later moved into a small house in Vera where she lived alone. She had no children. She had four nephews [Ross brothers] and four nieces [Ross sisters], and one living brother named Daniel W. Ross.

In February of 1958, at approximate age of 79, Florence became ill and was hospitalized in Tulsa. Upon advice of her doctor that she was unable to care for herself, she was moved to Sunny Acres Nursing Home on March 16, 1958. The deed in question was executed May 20, 1958, and filed of record the next day. Florence died September 3, 1962.

The first question that arises is whether statute of limitations has expired on Ross sisters' cross-petition.

██ Ross sisters allege that fraud and undue influence were not discovered until Ross brothers filed suit to terminate joint tenancy deed in 1972. Under 12 O.S.1971 § 95(3), cause of action on ground of fraud does not accrue until discovery of fraud. See *Warner v. Coleman et al.*, 107 Okl. 292, 231 P. 1053.

However, Ross brothers point to fact that deed had been filed of record since

1958. In this regard our attention is directed to *Matthewson v. Hilton*, Okl., 321 P. 2d 396; *Caraway v. Overholser*, 182 Okl. 357, 77 P.2d 688; *Seigle v. Richardson*, Okl., 317 P.2d 767 and *Harjo Heirs v. Standley*, Okl., 305 P.2d 864, wherein we held § 95(3) of above cited statute does not require that complaining party must necessarily have had actual notice of fraud aleged, because constructive notice of fraud from public records, required by law to be kept, is sufficient to set statute in motion.

■ Where means of discovering fraud are in hands of party defrauded and defrauding party has not covered up his fraud to extent it would be difficult or impossible to discover, party defrauded will be deemed to have had notice of fraud from date means of discovering such fraud came into his hands and fraud will be deemed to have been discovered upon that date. *Smith v. Kimsey*, 192 Okl. 618, 138 P.2d 94; *Eaves v. Busby*, Okl., 268 P.2d 904; *Harjo's Heirs v. Standley*, supra.

In *Holmes v. McKey*, Okl., 383 P.2d 655, we cited with approval *American National Bank of Enid v. Crews*, 191 Okl. 53, 126 P.2d 733, wherein we held:

"In cases of fraud the statute of limitations begins to run only from the time of discovery of the fraud, or from such time as the defrauded party, by exercise of ordinary diligence, might have discovered such fraud."

It is clear that means of discovering fraud and undue influence came into the hands of Ross sisters when deed was filed of record in 1958. It is also clear Ross sisters failed to exercise ordinary diligence in discovering fraud and undue influence.

■ We therefore hold statute of limitations has expired on issues of fraud and undue influence. However, relief is also sought based on lack of mental capacity.

In *Ward v. Lindly*, Okl., 294 P.2d 296, wherein suit was instituted to cancel deed due to grantor's incapacity we stated in second paragraph of syllabus:

"In an action to cancel a void conveyance of land, the plaintiff is not barred by any lapse of time short of that sufficient to establish title by prescription, as fixed by subdivision 4, 12 O.S.1951 § 93."

■ If any cause of action stated in a pleading is not vulnerable to the charge upon which it is attacked by general demurrer, the demurrer should be overruled. *Wallace v. Williams*, Okl., 313 P.2d 784; *Zebold v. Hurst*, 65 Okl. 248, 166 P. 99; *Taylor v. Clark*, Okl., 380 P.2d 250. Also see *Crumley v. Smith*, Okl., 397 P.2d 119.

■ We hold that since Ross sisters' cause of action has arisen, partly at least, out of alleged fact of lack of capacity of grantor, the fifteen year limitation period contained in 12 O.S.1971 § 93(4) is applicable.

The next question to be decided is whether judgment of trial court upholding validity of deed is against clear weight of the evidence.

Ross sisters contend trial court erred in holding that Florence had sufficient mental capacity to execute a valid deed.

The test of a person's ability to make a valid deed is set forth in *Armstrong v. Anderson*, Okl., 417 P.2d 326, wherein we cited with approval the following language from *Tate v. Murphy*, 202 Okl. 671, 217 P.2d 177, 185, 18 A.L.R.2d 892 and *Miller v. Folsom*, 49 Okl. 74, 149 P. 1185:

"The test of capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting. To invalidate a deed it must appear that the grantor was incapable of comprehending that the effect of the deed, when made, executed and delivered would be to divest him of the title to the land set forth in the deed."

■ In an action to cancel a deed conveying real property for lack of mental capacity on part of maker, the presumption is that maker of deed had mental capacity

�en

to execute the same; and burden of proof is upon party attacking validity of deed. *Armstrong v. Anderson,* Okl., supra; *Wills et al. v. Dissing,* Okl., 356 P.2d 339; *Duncan et al. v. Burkdoll,* 204 Okl. 574, 232 P.2d 151.

■ To cancel a deed for lack of mental capacity of grantor evidence must be clear, satisfactory, and convincing. *Armstrong v. Anderson,* supra. Also see 26 C.J.S. Deeds § 208b.

The record reveals that evidence presented as to Florence's mental capacity is in sharp conflict.

Witnesses for Ross brothers testified Florence was alert, competent, and normal.

Witnesses for Ross sisters testified Florence sometimes appeared confused, vague, and that her concentration was poor. They also testified her home was untidy and that she sometimes took care of her cattle at odd hours, such as midnight.

None of these witnesses for Ross sisters testified about mental condition of Florence at specific time of execution of deed in question except a nurse's aid who was employed at Sunny Acres Nursing Home in 1958. She testified that from March 16, 1958, to July 15, 1958, Florence's general mental state would best be described as mental confusion rather than mental incompetence. It was her opinion Florence would not have understood effect of signing a deed. She further testified, however, that Florence knew her nephews when they came to visit her and would talk about her property.

■ The test of capacity to make a deed or conveyance is that grantor shall have ability to understand nature and effect of act at time conveyance is made. *Marten v. Wagner,* 198 Okl. 273, 178 P.2d 618.

■ Fragmentary evidence of isolated instances indicating failing memory is insufficient to overcome evidence that grantor was mentally competent at time of executing deed. *Antle v. Hartman,* 193 Okl. 524, 145 P.2d 756.

■ Testimony of forgetfulness and wandering of mind of grantor of deed is insufficient to establish lack of mental capacity to make valid deed. *Armstrong v. Anderson,* supra.

■ We conclude that the above statements made by lay persons is not clear, satisfactory, or convincing enough to meet the requirements set forth in *Armstrong v. Anderson,* supra, for cancelling deed for lack of mental capacity.

A medical doctor also testified on behalf of Ross sisters. He testified that he practiced medicine at Sunny Acres Nursing Home in 1958. He stated that according to his records Florence was afflicted with Chronic Brain Syndrome which is commonly referred to as senility. He explained that persons with Chronic Brain Syndrome are not completely and totally senile, but are in a senile state. He further explained that Chronic Brain Syndrome indicates the person is not completely competent because their judgment is affected by poor circulation to the brain. He testified that it was his opinion that from March 1958, throughout the balance of the year Florence would not have had sufficient mental capacity to have understood effect of executing a deed. The doctor then testified he did not specifially remember Florence but was basing his opinion on fact that so many people in the nursing home during 1958 had mental problems.

We believe this medical testimony to be somewhat akin to medical evidence set forth in *Armstrong v. Anderson,* supra. There, by stipulation of parties, a letter signed by a medical doctor was admitted into evidence. It stated, in effect, that one of the grantors of a deed had Chronic Brain Syndrome and was mentally incompetent. It further stated that the other grantor had senile brain changes due to arteriosclerosis which caused her judgment to be poor and affected her ability to be influenced. We stated:

"There is no explanation of the medical terms used in this letter, or as to what

extent the medical or mental situation described by such terms would affect the ability of either of the plaintiffs to understand the nature and effect of their deed to the defendant at the time of the execution of such deed. These statements are not clear, satisfactory, or convincing enough to meet the requirements set forth in *Tate v. Murphy,* supra, for cancelling a deed for lack of mental capacity of the grantors to make a valid deed."

In instant action it is important to note the doctor's testimony that Chronic Brain Syndrome does not mean the person is completely and totally senile. It is also important to note the doctor's testimony that Chronic Brain Syndrome indicates the person is "not completely competent."

The law does not require grantor of a deed to be "completely competent." In *Scott v. Scott,* 131 Okl. 144, 268 P. 245, 247, we said:

"The test of capacity to make a deed is that the grantor should have the ability to understand the nature and effect of the act in which he is engaged, and the business he is transacting. He may be old; he may be enfeebled by disease; he may be erratic, irritable, and changeable in his views; he even may be irrational upon some topics, but, in the absence of fraud, he may still execute a valid deed."

The further fact that the doctor, in present case, could not specifically remember Florence casts a great deal of doubt on his opinion that she lacked mental capacity to execute deed.

We conclude the doctor's testimony is not clear, satisfactory, or convincing enough to meet requirements set forth in *Armstrong v. Anderson,* supra, for cancelling deed for lack of mental capacity.

This is appeal from judgment in equity case. In such appeal we will examine record and weigh the evidence, but will not disturb trial court's judgment unless clearly against weight of the evidence. *Duncan*

*et al. v. Burkdoll,* supra. We hold judgment of trial court upholding validity of deed is not against clear weight of the evidence.

Affirmed.

All Justices concur.