Carl STORCK, Gladys Storck, George Storck, Evelyn Storck, Marie Bonawitz and Min-Tex Oil Corporation, a corporation, Appellants,

v.

CITIES SERVICE GAS COMPANY, a corporation, Appellee.

No. 48789.

Supreme Court of Oklahoma.

Nov. 22, 1977.

As Amended on Denial of Rehearing March 13, 1978.

H. B. Watson, Jr., John C. Moricoli, Jr., Watson, McKenzie & Moricoli, Oklahoma City, for appellants.

Russell [Jack] Thompson, Monnet, Hayes, Bullis, Grubb, Thompson & Edwards, Oklahoma City, Richard H. Ruth, Cities Service Gas Co., Oklahoma City, Denny W. Falkenberg, Medford by Richard H. Ruth, Oklahoma City, for appellee.

BERRY, Justice:

This case arises from a dispute concerning lease for underground storage of gas. Appellants, members of Storck family [Storcks] and Min-Tex Oil Corporation [Min-Tex], were plaintiffs below; appellee, Cities Service Gas Company [Cities Service], was defendant. Parties will be referred to by name or by title in this Court. The term appellants will be used to include all named appellants.

During the early 1960's Cities Service was establishing an underground gas storage area in Grant County.

In 1960 a well was drilled by Davidor and Davidor on the Storck tract [Davidor well]. The well was never produced for oil or gas but was abandoned as a "dry hole."

In February 1964, Storck family leased part of subsurface formations under their farm, NW/4 Section 35, T28N, R3W, to Cities Service for a period of 50 years. The lease gave Cities Service the right to store natural gas in all underground formations above the base of the Mississippi Lime. The lease required drilling operations on the Storck property to have prior approval of Cities Service, and allowed Cities Service to have a representative present during those operations.

In 1973 Storcks executed mineral leases giving Min-Tex the right to conduct oil and gas producing operations in all formations underlying the farm. Min-Tex requested permission of Cities Service to drill into the storage strata for oil and gas; permission was not forthcoming.

Appellants commenced this action to declare gas storage lease void and cancel lease on several grounds, and for actual and exemplary damages [the damage issues have yet to be tried]. Appellee countered with suit to enjoin Min-Tex from drilling and producing above base of Mississippi Lime formation. Trial court denied each party relief requested. Appellants commenced this appeal. Cities Service did not appeal.

We first consider appellants' final proposition and then the remaining propositions in order.

Appellants' fifth proposition is this Court should adjust the equities between the parties. Appellants present the Court with two alternatives: [1] cancellation of the gas storage lease insofar as it purports to prohibit drilling and production upon the realty in question; [2] entry of judgment for appellants for the amount of $5,270,346.00 which they claim represents the value of the oil and native gas in place under the land in question.

The issues of damages, in appellants' fifth and sixth causes of action, have not yet been determined by trial court. We refrain from comment upon damages to any greater extent than necessary to determine this appeal.

We will not cancel gas storage lease. Construing lease provisions and applicable statutory law of this State we find no such inequity as would authorize cancellation of gas storage lease.

In *Oklahoma Natural Gas Company v. Long*, Okl., 406 P.2d 499, in the fifth paragraph of the syllabus, we held:

"The right of the Legislature to act under the police power of the state is a part of the existing law at the time of the execution of every contract and as such becomes in contemplation of law a part of that contract."

The application of the foregoing rule to the facts of the instant case makes the limitation contained in 52 O.S.1971 § 36.1 et seq. a part of every gas storage lease.

The record shows the gas storage lease was concluded between Storcks and Cities Service in contemplation of condemnation proceedings under 52 O.S.1971 § 36.3. This

section provides for condemnation of sub-surface strata for storage of natural gas. The action may be maintained in district court.

▮ The gas storage lease was negotiated, in part, on the premise parties could thereby avoid a lawsuit to condemn the underground strata. Cities Service's landman, from the beginning of the lease negotiations, informed Storcks that condemnation proceedings would be had if the lease was not concluded. We will not say Storcks, by entering into this lease in lieu of condemnation, divested themselves of protections available to them under condemnation statutes in the facts of this case.

The terms of 52 O.S.1971 § 36.3, provide limitations upon the type of strata which may be condemned:

"  .   .   .

"(a) No sand, formation, or stratum which is producing or which is capable of producing oil in paying quantities, through any known recovery method, shall be subject to appropriation .   .

"(b) No gas bearing sand, formation, or stratum shall be subject to appropriation hereunder, unless the volumes of native gas originally in place therein shall be shown to be substantially depleted, and that such sand, formation or stratum has a greater value or utility as a gas storage reservoir for the purpose of insuring an adequate supply of natural gas for any particular class or group of consumers of natural gas, or for the conservation of natural gas, than for the production of the relatively small volumes of native gas which remain therein, provided that no gas sand, formation or stratum shall be condemned (in certain other, immaterial, circumstances) .   .   .

"(c) Only such area of such underground sand, formation or stratum as may reasonably be expected to be penetrated by gas displaced or injected into such underground gas storage reservoir may be appropriated hereunder.

"  .   .   .

"The right of condemnation hereby granted shall be without prejudice to the rights of the owner of said lands or of other rights or interests therein to drill or bore through the underground stratum or formation so appropriated in such manner as shall comply with the orders, rules and regulations of the (Corporation C)ommission issued for the purpose of protecting underground storage strata or formations against pollution and against the escape of natural gas therefrom and shall be without prejudice to the rights of the owner of said lands or other rights or interests therein as to all other uses thereof. The additional cost of complying with such regulations or orders in order to protect the storage shall be paid by the public utility."

The pertinent clauses of the lease are:

"4. Lessors hereby covenant and agree that, during the term of this lease, they will carry on no operations on said land to produce oil or gas from any formations lying above the base of the Mississippi Lime, either directly or by lease or agreement with others, and will, themselves, or by lease or agreement with others, conduct no operations which will interfere with or damage Lessee's operation on, in and under said land in accordance with the purpose granted in this lease. .

"10.  It is agreed that any operation on said land, which without limitation includes drilling and mining, while gas is stored on said land pursuant to this lease shall be so conducted as to prevent the escape of gas from, and the intrusion of water and other fluids into, any formation in which gas is so stored. Before any party begins any operation connected with or resulting from drilling and mining on said land, such party shall notify Lessee in writing by United States mail addressed to Lessee at Oklahoma City, Oklahoma, not less than thirty days prior to the intended beginning of any such operation. Thereupon and before actually beginning any such operation, such party and Lessee shall agree upon the methods and practices which such party

shall use in any such operation, which without limitation includes plugging and abandoning thereof. Lessee shall have the right to have a representative present at all times while any such operation is conducted and shall have the right of access to records of such operation."

■ It is public policy that ". . . The production of oil in the State of Oklahoma in such manner as to constitute waste as . . . defined is hereby prohibited . . ." 52 O.S.1971, § 86.2. The term "waste" as applied to the production of oil is defined in part as economic waste and underground waste. Ibid. As applied to the production of gas the term "waste" is defined in part as the production of gas in such quantities or in such manner as unreasonably to reduce reservoir pressure or unreasonably to diminish the quantity of oil or gas that might be recovered from a common source of supply. 52 O.S.1971 § 86.3. Waste can consist of unreasonable production or unreasonable non-production. See *Sinclair Oil and Gas Company v. Bishop,* Okl., 441 P.2d 436.

Cities Service seems to argue lease of a stratum for gas storage forecloses the possibility of later exploitation for oil and native gas. The position is untenable. The statutes do not authorize a change in the legal treatment of oil or native gas. The Storcks have a right to produce oil and native gas from those horizons not actually used for gas storage. The identity of horizons actually used for gas storage is a fact question for the proper forum. By mineral lease, Min-Tex succeeds to the Storcks' right.

The gas storage lease is clearly not a mineral lease. The lease does not transfer title to minerals in place [native oil or gas] to Cities Service. We deem the provisions giving Cities Service title to all gas ". . . introduced, stored or removed" from the tract as simply preserving in Cities Service the ownership of the gas it injects under the Storck farm.

■ Rather, the gas storage lease is a lease of real property. Appellants, as reversioners, have the right to expect return of the property at the expiration of the lease in the same condition as when it was delivered to Cities Service, fair wear and tear excepted. Allowing oil or native gas to migrate away would damage the reversion.

■ Cities Service argues paragraph 4 of gas storage lease forbids any operations to produce hydrocarbons from horizons above the Mississippi Lime. If we were to accept that construction the lease would protect unreasonable underground waste or allow drainage by offset production. However, paragraph 4 could be construed to mean production of hydrocarbons from leased horizons is limited by obligation not to interfere with or damage gas storage operation. We think that interpretation is reasonable, and would allow a protection of Cities Service's interest and the reversionary interest.

■ Cities Service could have purchased the minerals in place from base of the Mississippi to the surface but Cities Service *may not* under *a gas storage lease* prohibit drilling and production of oil in paying quantities from any 'sand formation or stratum'; nor can Cities Service prohibit drilling, development and production of native gases regulated under 52 O.S.1971 § 36.3(b). The right to be present at the time of exploration, development and production is not questioned. The power to contract within the limitation of the conservation regulations of the Oklahoma statutes cannot be doubted. In this case Cities Service, by mineral conveyance or incorporating proper provision in the gas storage agreement itself could have contracted for oil in place, or for the excess of gas above the quantity injected. However, the record in this case will not support a conclusion that such interests as last described were conveyed by the appellants Storck to Cities Service.

Each and every party to the "producers' lease" and "gas storage lease" [Storck, Min-Tex Oil Corporation and Cities Service] has the duty to protect the interests and estates of each and every other party as well as those duties established by conservation practices and statutes of the State of Oklahoma.

■ Adjustments of equities, by way of cancellation or reformation of the gas storage lease, is not required in this situation. Each party's rights to enjoyment of the leased horizons, and to the oil and gas in place in those strata, can be protected legally.

The procedures for, and concepts of, unitization of mineral operations among draining tracts and drained tracts are not part of the jurisdiction of the district court, and nothing we say herein should be taken to impinge on any right parties hereto may have before the Corporation Commission.

Appellants' first proposition is the gas storage lease was entered into under a mutual mistake of fact and is therefore void and should be cancelled.

· Appellants maintain parties to gas storage lease were mistaken as to presence of hydrocarbons in paying quantities in strata underlying Storcks' tract.

Trial court found no mutual mistake of fact. We are not inclined to disturb trial court's conclusion.

■ We do not disturb trial court's findings of fact in cases of this nature unless findings appear clearly against weight of the evidence. *Matter of Woodward,* Okl., 549 P.2d 1207. We do not find this standard satisfied here. Appellants introduced testimony of one geologist concerning the Davidor well drilled on the Storck tract in 1960 and abandoned as "dry hole." He testified the well might have been a producer had it not been abandoned when drilled. To counter that, testimony of Davidor's geologist at the trial shows he is still of the opinion the well is a dry hole. The Corporation Commission [without notice to Storcks] found the tract, and same strata in the neighboring area, to be depleted to the extent necessary to justify use of area for gas storage. It further found production to the west of appellants' tract has been started since the gas storage project was initiated. In view of this state of the record we cannot say trial court erred in finding no mutual mistake of fact.

■ Appellants' second proposition is gas storage lease, insofar as it purports to prohibit drilling and production, violates public policy of this State and express statutory provisions against economic waste, and is therefore void and unenforceable. Appellants cite no authority for the theory the gas storage lease violates statute, and in this case we are not persuaded.

We do not conclude the underground storage of natural gas is contrary to public policy. The legislature has declared underground storage of natural gas to be in accordance with public policy. 52 O.S.1971, § 36.2.

Nor do we conclude statutes of this State favoring conservation of oil and gas and statutes providing for underground storage of natural gas are in conflict, for reasons set out above. We deem appellants' second proposition not well taken.

Appellants' third proposition is gas storage lease was procured through fraud, duress, undue influence and coercion and is therefore void and unenforceable and ought to be cancelled.

■ We do not agree with appellants' position. Appellants argue Cities Service's landman placed Storcks in some form of duress or coerced them into signing the gas storage lease. The record contains insufficient evidence to sustain appellants' point. Appellants seem to see the action of Cities Service's agent in threatening to condemn the property for gas storage as duress or coercion. However, condemnation was a possible legal alternative open to appellee at the time the lease was negotiated. Negotiations were, in part, based on the desire to avoid such a suit. The record does not support appellants' contention that appellee's agent overstepped the bounds of propriety.

■ Trial court ruled there had been no fraud committed by Cities Service in obtaining the lease. Appellants insist Cities Service's landman defrauded Storcks by representing Davidor well as a dry hole when it was capable of producing hydrocarbons. There has been no evidence to show

appellee or its employee knew in 1964 the Davidor hole might be capable of producing oil. The landman's statements were made upon the same kind of knowledge about Davidor well as Storcks possessed. The record does not establish Storcks relied on the landman's statements. We cannot say trial court erred in its conclusion that fraud was not proved.

Appellants take the position the local banker stood in a confidential relation to appellants and violated that relation by urging them to execute the lease. Appellants claim the banker was actually appellee's agent and failed to disclose that fact to them. As proof of this issue they show the banker received a check from appellee for an amount equal to one dollar per acre of the Storck track leased to appellee, and was marked "Expense . . . to the Storck lease." Cities Service's landman and the banker both testified this check was for expenses attendant upon landman's use of the banker's office and telephone. They denied the banker had any connection with the gas storage project other than as a public spirited citizen who thought this kind of development would be beneficial for the community.

In any event trial court did not see banker's influence upon Storcks was as great as claimed. Our review of the record discloses appellant Carl Storck, who negotiated the lease for Storcks, was engaged in negotiations for a considerable period of time, that he consulted his brother, a co-lessor and appellant, and the banker, and finally that he insisted on extensive revision of the proposed lease prior to executing the instrument. We cannot say appellants have shown Storcks surrendered to banker the duties ordinarily exercised by a prudent lessor. It does not appear the decision to execute lease was substantially banker's because of substitution of his will for will of the Storcks. Absent a showing will of Storcks was subordinated to and replaced by the will of banker we will not say undue influence has been proved. *Derdyn v. Low,* 94 Okl. 41, 220 P. 945. See *Blanchard v. Gordon,* Okl., 418 P.2d 678.

In part A of the fourth proposition appellants argue it was error for district court to exclude certain testimony offered by appellants. The transcript of trial contains the following exchange:

"*By (appellants' counsel)*:

"Q. . . . Now, Mr. Storck, at the time you executed the lease, what was you understanding of what you were giving up in consideration for the payment to you by Cities Service?

"A. Well, that they got—

"*Mr. (appellee's counsel)*:

"Objection, your Honor.

"*The Court*:

"Sustained.

"*Mr. (appellants' counsel)*:

"If the Court please, your Honor, one of our causes of action is on the basis that this lease is vague, indefinite and ambiguous, and I submit that, one, it appears so on its face, and two, that we wish to have the plaintiff testify as to how he interpreted the lease; what he thought it meant.

"*The Court*:

"The objection is sustained."

Appellants argue where fraud is alleged testimony about circumstances leading up to signing the instrument and extrinsic facts showing interpretation parties put upon the writing are all admissible. We agree on this academic proposition. *Oklahoma Company v. O'Neil,* Okl., 440 P.2d 978; *Bobo v. Bigbee,* Okl., 548 P.2d 224.

Assuming testimony of Carl Storck may properly have been admitted, appellants have shown us no way in which that evidence would have changed the result in the case.

Where it appears admission of evidence improperly excluded would not affect the outcome, the error in excluding the evidence is harmless. See *McMillan v. Lane Wood & Company,* Okl., 361 P.2d 487; *Gray v. Gray,* Okl., 459 P.2d 181.

Appellants urge, part B of proposition four, that trial court erred in refusing

to admit an exhibit in rebuttal. Appellants had introduced many exhibits in an effort to prove a fault sealed their tract from the rest of the gas storage area and their tract was underlain with paying quantities of hydrocarbons.

At the conclusion of Cities Service's case appellants sought to introduce a report authored by a geologist employee of Cities Service. Appellants attempted to elicit testimony about the report from its author. The report concerned the property in question and was undertaken and completed after the gas storage lease had been executed. The court refused to admit the geologist's report.

We have examined the proffered exhibit and it would constitute cumulative evidence before trial court. The court did not err in refusing to admit cumulative evidence.

In light of the foregoing, trial court is affirmed. This matter is remanded for further proceedings not inconsistent with this opinion.

LAVENDER, V. C. J., and DAVISON, WILLIAMS, IRWIN, SIMMS and DOOLIN, JJ., concur.

HODGES, C. J., and BARNES, J., dissent.