Carl **STORCK**, Gladys Storck, George Storck, Evelyn Storck and Min-Tex Oil Corporation, a corporation, Appellants,

v.

**CITIES SERVICE GAS COMPANY**, a corporation, Appellee.

No. 53542.

Court of Appeals of Oklahoma, Division No. 2.

June 2, 1981.

Rehearing Denied Aug. 10, 1981.

Certiorari Denied Sept. 28, 1981.

Released for Publication by Order of Court of Appeals Oct. 2, 1981.

John C. Moricoli, Jr., Michael R. Wilson, Watson, McKenzie & Moricoli, Oklahoma City, for appellants.

Russell (Jack) Thompson, Monnet, Hayes, Bullis, Grub, Thompson & Edwards, Richard H. Ruth, Oklahoma City, Denny W. Falkenberg, Medford, for appellee.

BOYDSTON, Judge.

This is the second appeal of a case arising from a disputed underground gas storage lease. Several members of the Storck (Storcks) family and Min-Tex Oil Corporation filed suit in 1974 to cancel an under-

ground gas storage lease which had previously been granted to Cities Service Gas Company (Cities Service). The lease included all underground formations above the Mississippi Lime base, prohibited exploration above the said base, and required Storcks to obtain written permission from Cities Service to drill below the base. After the lease was granted, adjoining property owners discovered oil in the Red Fork formation and developed valuable producing wells. Storcks attempted to obtain permission to drill the same Red Fork formation, which is above the Mississippi Lime base. Based on the covenants contained in their lease, Cities Service refused to permit exploration.

The original suit alleged six causes of action, the first four of which were decided against Storcks at trial on the merits. The fifth and sixth causes of action were not tried, but were reserved for later determination.

The trial court held as to the four causes of action as follows:

(1) There existed no mutual mistake of fact that there was explorable oil on the premises such as to justify cancellation of the lease;

(2) Cities Service had not committed any fraud or misrepresentation in procuring the lease;

(3) The gas storage lease itself was not against public policy; and

(4) The terms of the lease were not ambiguous such as to void certain provisions.

The reserved causes of action alleged:

(5) and (6) Cities Service's continued refusal to permit drilling has denied Storcks the right to produce valuable hydrocarbons and has resulted in drainage by neighboring wells; the refusal is tortious and malicious causing actual damages of $150,000 and warranting $1,000,-000 punitive damages.

The trial court's ruling denying relief for the first four causes of action was appealed to the supreme court. In *Storck v. Cities Service Company*, Okl., 575 P.2d 1364 (1977), the court upheld the trial court's

decision and "remanded the case for further proceedings not inconsistent with this opinion."

This left only the fifth and sixth causes of action for trial. After remand, Cities Service attacked the remaining two causes of action by motion for summary judgment which was granted. That order totally extinguished Storck's case. Therefore, the sole issue presented for appeal is whether the trial court erred in granting summary judgment.

I

Rule 13 of the rules of district court provides such a motion shall be granted only when there is no substantial controversy as to any material fact.[1] The basis for the motion is a claim by Cities Service that adverse disposition of the first four causes of action implicitly constituted an adverse ruling on the remaining two causes of action. This position is argued under the theories of estoppel by judgment and res judicata. We find neither theory to be applicable.

Cities Service urges the position that since the gas storage lease has been upheld in all particulars as being valid and in full force and effect, Storcks are not entitled to any damages by reason of the refusal to permit drilling to the Red Fork formation.

Storck's fifth cause of action alleges, in part:

There are presently two oil wells producing from the Red Fork formation approximately 330 feet from the west boundary of the above described premises ... and has been producing large quantities of oil ... that said wells are draining oil from under the above described premises and will continue to do so until such time as the interference of the defendant is eliminated ... [and] plaintiffs have sustained damages from such drainage to date in the sum of ... $150,000.

The sixth cause of action alleges:

Plaintiffs have contacted defendant on numerous occasions ... in an attempt to

---

1. Dist.Ct. Rule 13, 12 O.S.1973 Supp., Ch. 2., App.

work out a drilling program for the Red Fork formation ... but defendant with full knowledge of the facts and with complete and utter disregard of the rights of the plaintiffs has refused to allow any drilling operations ... [which amounts to] unlawful molestation and intentional unjustified interference by defendant ....

Storck's prayer for relief asks for punitive damages in the amount of $1,000,000.

Storck's amended petition realleges and incorporates these allegations and further pleads this conduct amounts to tortious interference by defendant with their right to produce oil. The original demand to drill to the Red Fork was made on January 11, 1974. Since that time additional demands have been made continuously.

We decline to characterize the conduct of Cities Service as "tortious" as a matter of law. It does amount to an over-broad construction of Cities Service's lease rights, and constitutes, at least, a breach of contract.

In substance, the trial court and Cities Service consider the supreme court disposed of all six causes of action; the first four directly and the fifth and sixth by implication.

We hold the supreme court had no intention of extinguishing the fifth and sixth causes of action. On the contrary, it specifically referred to these as being viable and independent of those which were extinguished.

The supreme court found the gas storage lease was negotiated in the shadow of threatened condemnation as authorized by 52 O.S.1971 § 36.1 *et seq.* The court held any lease so procured was subject to all the rights and obligations as contained in 52 O.S.1971 § 36.3 which provides:

(a) No sand, formation, or stratum which is producing or which is capable of producing oil in paying quantities, through any known recovery method, shall be subject to appropriation ... the *right of condemnation hereby granted shall be without prejudice to the rights of the owner of said lands or of other rights or interests therein to drill or bore through the underground stratum* or formation so appropriated in such manner as shall comply with orders, rules and regulations of the [corporation] commission .... (emphasis added)

At page 1368 of its opinion, the supreme court stated:

Cities Service seems to argue lease of a stratum for gas storage forecloses the possibility of later exploitation for oil and native gas. The position is untenable. The statutes do not authorize a change in the legal treatment of oil or native gas. *The Storcks have a right to produce oil and native gas from those horizons not actually used for gas storage.* The identity of horizons actually used for gas storage is in fact a question for the proper forum. By mineral lease, Min-Tex succeeds to the Storcks' right. (emphasis added)

The supreme court further held:

Cities Service argues paragraph 4 of gas storage lease forbids any operation to produce hydrocarbons from horizons above the Mississippi Lime. If we were to accept that construction the lease would protect unreasonable underground waste or allow drainage by offset production. However, paragraph 4 could be construed to mean production of hydrocarbons from leased horizons is limited by obligation not to interfere with or damage gas storage operation. We think that interpretation is reasonable, and would allow a protection of Cities Service's interest and the reversionary interest.

\* \* \* \* \* \*

Cities Service could have purchased the minerals in place from base of the Mississippi to the surface but Cities Service *may not* under *a gas storage lease* prohibit drilling and production of oil in paying quantities from any 'sand formation or stratum'; nor can Cities Service prohibit drilling, development and production of native gases regulated under 52 O.S.1971 § 36.3(b).

Cities Service still clings to the plain language of the naked lease to prohibit produc-

tion of hydrocarbons above the base of the Mississippi Lime, apparently ignoring the fact that the supreme court has cloaked all gas storage leases procured under these circumstances with the protective provisions of 52 O.S.1971 § 36.1 et seq. as above cited.

In so doing the court has held the provision of the private lease to be a limitation only as to production of hydrocarbons contained within the actual gas storage area. Cities Service characterizes the above quoted language as *dicta*, a conclusion with which we cannot agree.

■ We construe the *Storck* case to directly authorize Storcks the right to explore the Red Fork as demanded since 1974, subject to Cities Service's contractual rights to monitor and approve drilling plan and further subject to the rules and regulations of the corporation commission and 52 O.S.1971 § 36.1 *et seq.* Accordingly, if the Red Fork is located in a non-subsurface storage formation and has been drained of valuable hydrocarbons by reason of Cities Service's obstruction, the Storcks are entitled to damages therefor.

## II

■ We next address the question of punitive damages. The fundamental conflict between these parties is the correct interpretation of lease terms. The lease has been declared by the supreme court in a case of first impression to be augmented by statutory provisions. Throughout, Cities Service has relied on the plain language of its lease which prohibits drilling above the Mississippi Lime base and also prevents drilling below, except with consent. The

Red Fork is above the formation. Until such time as the supreme court incorporated the provisions of 52 O.S.1971 § 36.1 *et seq.* into the contract, Cities Service had every right to rely on the plain language of the contract. The net result of the *Storck* decision is a sweeping and dramatic court-imposed revision of all existing gas storage contracts, greatly expanding the rights of lessors and proportionately diminishing the rights of lessees. It would be unreasonable to hold Cities Service to such a high standard of contract interpretation as to require it to foresee such a rare and breathtaking legal event. The law does not require each party to a contract to be infallibly correct in its interpretation of contract terms at peril of being charged with punitive damages. It only requires that each party conduct itself reasonably.

■ We agree certain contract breaches can and do amount to tortious conduct;[2] that such breaches, if founded in malice, fraud or oppression, could even justify punitive damages. However, breach of contract under these circumstances does not automatically form the basis for punitive damages. This does not appear to be a case where breach was the result of distorted or fanciful contract term interpretation. Based on the record, Cities Service did no more than attempt to enforce an apparently clear, privately negotiated[3] contract. Under these circumstances the contract interpretation appears to be without malice and intent to deliberately injure as a matter of law.

---

**2.** While 23 O.S.1971 § 9 limits right to recover punitive damages to situations not arising from contract, exceptions are made where the breach involved is "willful, designed to injure, intentional, purposeful or malicious." *See Leigh v. Wadsworth,* Okl., 361 P.2d 849 (1961), wherein builder negligently built porch which collapsed injuring third party; *Morris v. Barton,* 200 Okl. 4, 190 P.2d 451 (1947), wherein lessee deliberately damaged well to benefit lessee's adjoining well; *Owens v. State,* 133 Okl. 183, 271 P. 938 (1928), wherein the court held acts may give rise to both tort and *ex contractu; Lilly v. St. Louis & S. F. Ry. Co.,* 31 Okl. 521, 122 P. 502 (1912), wherein punitive damages were awarded for willful breach of con-

tract; and *Hobbs v. Smith,* 27 Okl. 830, 115 P. 347 (1911), wherein court held breach amounted to fraud and deceit. Finally, *Oklahoma Natural Gas Co. v. Pack,* 186 Okl. 330, 97 P.2d 768 (1940), held:

> Accompanying every contract is a common law duty to perform ... with care, skill, reasonable expediency, and faithfulness, and ... a failure ... is a tort as well as a breach ... and the injured party may elect ... to sue upon the contract or treat the wrong as a tort ....

**3.** *Storcks' attorney assisted in negotiating the contract.*

On the other hand, we hesitate to prejudge Storcks' factual basis for punitive damages at this stage of the proceedings. We therefore hold, under these circumstances, mere proof of the fact of breach of contract, by itself, is insufficient to support an award of punitive damages.

We remand to trial court for trial on the merits as to: (1) the existence or nonexistence of native oil and gas underlying the tract; (2) whether hydrocarbons have been drained by nearby drilling; (3) the amount and value of drainage, if any; (4) whether those hydrocarbons exist outside the storage area; (5) whether the hydrocarbons can be produced without damage to storage operation; (6) the amount of actual damages suffered by Storcks, if any; and, (7) whether punitive damages are recoverable, and if so, to what extent. We hold these issues remain as controverted factual issues for the trial court's determination and further direct that any damages be computed from January 11, 1974.

By this holding, we liberally construe the pleadings [4] by combining and retaining all allegations contained in the fifth and sixth causes of action together with all essential incorporated allegations.

We therefore reverse trial court's judgment granting summary judgment and remand to the trial court for further proceedings consistent herewith.

BACON, P. J., and BRIGHTMIRE, J., concur.

---

4. The surviving cause of action for drainage damages pleads factual matters by reference to causes of action which have been dismissed. We do not interpret such a disposition to delete any factual allegations necessary to adequately plead the remaining causes of action just because it is technically also contained in a paragraph which also specifically sets out an extinguished cause of action. All such referenced factual matters necessary to support the surviving cause of action are deemed to be preserved.