This is an appeal from a judgment of the district court of Tulsa county, affirming a decision of the county court of that county, overruling exceptions to the final account of the administrators of the estate of P.E. Coyne, deceased. The appeal is prosecuted by Mary Ellen Hilton, plaintiff in error, as the sole and only heir at law of P.E. Coyne, deceased, against Thomas J. Coyne and F.M. Rodolf, defendants in error, as joint administrators of the estate of P.E. Coyne, deceased, seeking to charge them with certain disbursement which had been made by them to various individuals claiming to be heirs of P.E. Coyne, deceased, but who had subsequently been found not to be his heirs.
It appears that on the 27th day of April, 1918, P.E. Coyne died intestate in Mineral Wells, Tex., while a resident and citizen of Tulsa county, Okla., leaving real and personal property situated in Tulsa county of the probable value of $60,000.
On May 20, 1918, Thomas J. Coyne, a brother of the deceased, and F.M. Rodolf gave bond and qualified as joint administrators of the estate of P.E. Coyne by virtue of an order of the county court of Tulsa county, appointing them such administrators. Upon qualifying as administrators, notice to creditors was duly published and the time for creditors to file claims expired without any claims being filed.
It was known that P.E. Coyne had a daughter by a former marriage, but this daughter's whereabouts was then and had for long time been unknown. In January, 1919, the administrators filed a report, stating that they had been unable to locate this daughter and asked the court for an order authorizing them to incur expenses in an effort *Page 280 
to locate her. The county court granted this request, and authorized expenditures for this purpose up to $2,000. On March 26, 1919, the administrators filed in the county court a report, setting forth in detail their efforts and inability to locate the lost daughter.
On June 30, 1919, the administrators filed in the county court their verified report which showed a total of $33,543.82, collected by them, and total disbursements of $2,088.06, leaving a balance on hand in cash of $31,455.76, to which report there was attached an unverified petition by Thomas J. Coyne, alleging that all the lawful debts of the estate had been paid; that the estate was ready for settlement and distribution, and praying that the balance on hand should be distributed in certain proportions among certain designated heirs of the deceased, stating their relationship to the deceased, but omitting to state their addresses, and praying that the final account of the administrators be allowed and confirmed; that the residue of the estate be distributed and that the administrators be discharged.
The county court on the same day entered an order setting the petition for hearing on the 12th day of August, 1919, and directing notices thereof to be posted in at least three public places in Tulsa county, and by publication as required by law. Proofs of publishing and of posting were subsequently filed, showing that the notice of hearing the petition for distribution and for the settlement of the final account had been posted in three public places in Tulsa county on the 30th day of June, 1919, and by publication in the Tulsa Daily Legal News for three consecutive weeks; the first publication thereof being on the 30th day of June, 1919, and the last publication bearing date of July 21, 1919.
On the 12th day of August, 1919, pursuant to said notices, the county court entered an order for partial distribution, which, however, did not set out the names and interests of the heirs, directing the administrators to pay over to the heirs entitled thereto in their equal and just proportions, thereof, ninety per cent. of the cash balance remaining in their hands after deducting the sum of $3,700 as attorney's fees, and the further sum of five per cent. of the gross amount received as administrators' fees.
On the same day a separate order was made by the county court of Tulsa county determining the heirs of P.E. Coyne to be as stated in the petition which had been attached to the report of the administrators and filed on the 30th day of June, 1919, but it is admitted that this order was not signed until October 15, 1919, and was then signed by Lee Daniel, who was acting as special county judge, on August 12, 1919, in the absence of the regular county judge, and whose term of office as special county judge had expired some time prior to October 15, 1919.
Under these two orders the administrators disbursed to certain individuals, as heirs of P.E. Coyne, deceased, the sum of approximately $25,310.07, for which they took credit in their final account subsequently filed.
It is admitted, as we understand it, that the disbursements made by the administrators under the orders of August 12, 1919, were made by them in good faith and without any knowledge of the whereabouts of the plaintiff in error, and under the honest and mistaken belief that she was probably dead.
On the 1st day of December, 1919, thereafter, plaintiff in error, accidentally learned of the death of her father, P.E. Coyne, and immediately thereupon intervened in the county court of Tulsa county, and set up her claim as the sole heir of the estate of her deceased father.
Upon a hearing of her petition had on the 5th day of January, 1920, the county court entered an order, setting aside its decree of heirship rendered on the 12th day of August, 1919, and declaring her to be the sole and only heir of the said P.E. Coyne, deceased.
The administrators filed their final account in which they asked to be credited with the amounts disbursed to the heirs under the orders of August 12, 1919, and the plaintiff in error filed exceptions to this account, asking that they be charged therewith. The county court in a final decree entered on the 17th day of July, 1920, overruled the exceptions of the plaintiff in error to the final account of the administrators and ordered that the residue of the estate, including all claims against the parties to whom disbursements had been made by the administrators under the former orders of the court should be assigned and set over to the plaintiff in error.
An appeal was taken to the district court of Tulsa county, and the judgment and decree of the county court was affirmed. From the judgment so rendered by the district court, the plaintiff in error brings the cause regularly on appeal to this court, claiming that the trial court erred in overruling her exceptions to the final account of the administrators, and in not charging them with the sum of $25,310.07, disbursed by them under the order of partial distribution *Page 281 
entered by the county court of Tulsa county on the 12th day of August, 1919.
Plaintiff in error earnestly contends that the order of partial distribution entered on August 12, 1919, is void because it is based upon a petition which was not verified; that it did not contain the addresses of the purported heirs, nor a description of the property, and she invokes section 1385, Comp. Stat. 1921, which requires the petition of an heir for the determination of heirship to be verified and to set out the addresses of all known heirs with a description of the property. This contention would have to be sustained if the jurisdiction of the county courts of Oklahoma to enter a decree of partial distribution as an incident to its general probate jurisdiction did not exist independently of said sections 1384 to 1394, inclusive, Comp. Stat. 1921.
The act of April 4, 1919 (sections 1384 to 1394, inclusive, Comp. Stat. 1921), was an act intended to give concurrence of state procedure to the act of Congress of June 14, 1918, and while it was broad enough to cover proceedings to determine heirship of estates whether Indian estates or not, it did not repeal or supersede the general provisions of the Oklahoma statutes for a determination of heirship upon final settlement and distribution of estates as an incident to the general probate jurisdiction of the county courts as contained in sections 1354 to 1362, inclusive, of Comp. Stat. 1921. The act of April 4, 1919, expressly provided in section 6 that "the method herein provided for the determination of the heirs of the deceased person shall not be exclusive, but shall be in addition to the method already provided by law, except that the method provided in section 6488, Revised Laws of 1910, shall be no longer in force, and said section 6488 is hereby repealed."
It has been held by the Supreme Court of California, under statutes of that state, that an adjudication of heirship may be made upon distribution, and that the special statutory provisions for the determination of heirship contained in statutes of that state similar to the act of April 4, 1919, are not exclusive. In re Oxarart's Estate, 78 Cal. 109, 20 P. 367.
It is contended by plaintiff in error in her brief that this procedure cannot help defendants in error, because it only applies upon the final settlement or subsequent thereto. It is true that the procedure followed by the county court leading up to and resulting in the order of partial distribution was the procedure governing upon final distribution and settlement, but we know of no good reason why this should operate to deprive the court on such hearing to order a partial distribution, where the petition filed and the notices given constituted a substantial compliance with the procedure for obtaining partial distribution under our statutes. There was a petition filed by a person shown to be an heir under the record, as it then stood, and notice given in the same manner as required to be given on settlement of the account of the administrators as required by section 1355, Comp. Stat. 1921, relating to partial distribution. While the provisions of section 1354 to 1358, inclusive, Comp. Stat. 1921, relating to partial distribution, do not seem to require as a prerequisite a determination of heirship, there was in fact in this case such a determination, and while not incorporated in the same order in which a partial distribution was directed, was nevertheless made in a separate order on the same date. There was, therefore, a determination of the heirship on this date which coincided with the indviduals alleged to be the heirs in the petition filed in the case.
A determination of heirship upon partial distribution in the nature of things would not be final, and as we interpret the statute, could not be made at all if the heirship to the estate was disputed. As the matter stood on the date the decree of partial distribution was made, there was no dispute by any heir as to the identity of the parties entitled to receive partial distribution, and in this state of the record, we think the county court had jurisdiction to enter an order of partial distribution upon the execution of a bond by the person to whom distribution was to be made, in case there were unpaid creditors of the estate, and without bond, in case there were no creditors.
If partial distribution depended for its validity upon a final and conclusive determination of heirship, a partial distribution could not be made at all, since partial distribution must necessarily be made in advance of the time when final and conclusive determination of the heirship is made, either under the provisions of the Session Laws of 1919, or section 1360, Comp. Stat. 1921.
It is argued that the decree of heirship entered on August 12, 1919, was not effectual until entered of record, and that this cannot be done after the judge's term expires. It is the contention of counsel that under section 1398, Comp. Stat. 1921, it is necessary that an order to be effectual be entered of record during the judge's term, and that a memorandum of judgment is not a judgment until entered of record.
This argument is based upon the assumption that a decree of heirship was necessary *Page 282 
to the validity of the order of the county court for partial distribution. We have already pointed out that in a proceeding for partial distribution our statute does not require a determination of heirship.
The Supreme Court of California in construing statutes of that state similar to ours, which authorized a determination of heirship in proceedings under a special act of that state, as well as in the general statutes, held that proceedings for the determination of heirship under these two acts were exclusive and could not be determined on any proceeding for partial distribution.
In Lockwood v. Fleming, 98 P. 648, the Supreme Court of Montana announced the rule, as follows:
"Rev. Codes, paras. 7670-7672, providing for the determination of the rights of persons to an estate and as to distribution thereof, are exclusive, and the district court cannot determine whether petitioner is an heir of decedent, whether she is entitled to a distributive share, and, if so, the amount thereof in a proceeding under section 7669, authorizing proceedings for a partial distribution; the provision of that section that any heir, devisee, or legatee may petition for a distribution of the share of the estate to which he is entitled meaning that any heir, etc., shown by the record to be such, and whose right to inherit is not questioned, may petition for a distribution of his share."
Since there was no requirement for a determination of heirship on August 12, 1919, the argument that the same was not properly signed and entered of record is without merit.
We are, therefore, of the opinion that the order of partial distribution of August 12, 1919, was valid and that the administrators, acting in good faith thereunder in the disbursement and distribution of funds of the estate, are protected. Teague v. Smith, 85 Okla. 12, 204 P. 439; Frazer v. Page, 5 Ky. Law Rep. 790; Charlton's Appeal, 88 Pa. St. 476; Cowie v. Strohmeyer (Wis.) 136 N.W. 956; Harris v. Starkey (Mass.) 57 N.E. 698.
The contention made that no order for partial distribution could be made until the inheritance taxes had been paid is, we think, untenable. The prohibition against distribution of an estate until the taxes are paid under our statutes seems to apply only upon final and not upon partial distribution.
While the order of partial distribution of August 12, 1919, will protect the administrators in the disbursement of the funds of the estate to persons who were then in good faith believed to be the heirs of the deceased, this protection will not extend to protect one of such administrators in the disbursement of such funds to himself as such heir. The administrator, Thomas J. Coyne, will not be permitted to take credit for funds belonging to the estate of P.E. Coyne, deceased, without making restitution thereof to the plaintiff in error, who has been found to be lawfully entitled thereto. Both the plaintiff in error and the administrator, Thomas J. Coyne, are before the court, and we can perceive no good reason, certainly there can be no equitable reason, why the court while in the exercise of undoubted jurisdiction over both the parties and the subject-matter, and to prevent a multiplicity of suits, may not require that complete justice be done and the administrator. Thomas J. Coyne, charged with the $8,436.71, wrongfully paid himself as heir.
However, the amount thus paid to Thomas J. Coyne, administrator, as an heir of P.E. Coyne, deceased, should not constitute such a charge as would bind his coadministrator, F.M. Rodolf, or the sureties upon his administrator's bond. Administrator Coyne, coming into court seeking equity, must himself do equity, and where such administrator seeks credit for a sum of money paid to himself as a supposed heir, such credit will automatically become a charge against him, where the party lawfully entitled thereto is before the court claiming the right to such fund.
For the reasons stated, the cause is reversed and remanded to the district court of Tulsa county, with instructions to set aside its judgment herein and enter judgment charging Thomas J. Coyne, as administrator, with the item of $8,436.71, paid to himself as heir of P.E. Coyne, deceased, exonerating his coadministrator, F.M. Rodolf, and the sureties on the administrator's bond of Thomas J. Coyne from liability therefor, and take such further action as may be proper, not inconsistent with this opinion.
By the Court: It is so ordered.