## CAMPBELL v. CAMPBELL et al.

No. 17314—Opinion Filed Dec. 7, 1926.

1. **Executors and Administrators—Statutory Responsibility for Faithful Administration of Estate.**

   Under sections 1359, 1360, and 1382, C. S. 1921, an administrator is the agent of the decedent's estate and he and his bondsmen are responsible for the faithful administration of the property coming into his hands by virtue of his office, under the orders of the county court.

2. **Same—Requisites for Legal Transfer of Part of Estate by Administrator to Guardian for Use of Minor Heir.**

   Where there is a minor heir having a guardian distinct from the person acting as administrator, it requires an order of the county court to segregate and appoint or distribute to the use and benefit of said minor any part of the estate's property and an actual transfer to the person of the guardian to discharge the liability of the administrator and his bondsmen for the particular property so ordered.

3. **Same—Formal Transfer of Property Unnecessary Where Administrator is Also Guardian.**

   Where the same person acts as administrator of the estate and guardian of a minor heir, the rule of liability and discharge is the same as above stated, but in fixing the liability on the guardian and his bondsmen no formal transfer or delivery of the property is necessary, the order of the court setting it apart is sufficient.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Appeal by W. Randall Combell, a minor, by guardian, from an order of the district court reversing an order of the county court correcting final account of former guardian, Bella Campbell, and holding the guardian and her bond liable for certain funds of inheritance. Affirmed.

W. D. Halfhill and Watts & Broaddus, for plaintiff in error.

Orlando Swain and Edward C. Griesel, for defendants in error.

Opinion by THREADGILL, C. The record in this case discloses that on February 4, 1907 Walter R. Campbell died intestate in Henryetta, Okmulgee county, Okla., survived by his wife, Bella, and his son and only

child, Walter Randall, a minor, about two years of age, leaving an estate consisting of a residence, being the family home, on lots 5 and 6 in block 25 of the city of Henryetta, a stock of merchandise valued at $4,-383.10, and cash in the bank of 1,534.87, and debts on the stock of goods in the sum of $500. On August 26, 1907, said Bella Campbell, by order of the United States District Court for the Western District of Indian Territory, was appointed guardian of said minor child, Walter Randell Campbell, for which she gave bond in the sum of $5,000 with the Title Guaranty & Surety Company, a corporation, as surety. There was no inventory of property filed under this appointment. On December 19, 1907, said Bella Campbell filed a petition in the county court of Okmulgee county, asking to be appointed administratrix of the estate of said Walter R. Campbell, deceased, and on January 13, 1908, the court made the appointment, and thereafter on January 25, 1908, the court made an order directing the First National Bank of Henryetta to turn over to the said administratrix all funds on deposit in said bank belonging to the estate. On February 13, 1908, said administratrix filed an inventory and appraisement of the property belonging to the estate, in which she listed lot 13 in block 31, of the city of Henryetta, as an item of real estate valued at $900 with a statement that it was paid for in full with money belonging to the estate, the purchase price being $1,081.50. She also listed the stock of merchandise at a value of $3,500, and an item of cash on hand, $845.50, with a further statement that the money belonging to the deceased at the time of his death was $2,118.83.

After her appointment as administratrix, without order of the county court, she traded the stock of merchandise for the business lot, being lot 13 in block 31 above mentioned, and $500 in cash. She then borrowed money from a loan company to build on the lot, and, not being able to make the required payments to keep the loan in force and extend the time, the loan company foreclosed its lien on the property, and she lost it. The record does not show what she did with the $500 she received in the transaction. She testified she lost $1,500 of money in the bank in said business transaction, and it is not clear just how she spent or lost all the money, as well as the stock of goods and the business lot, but it is not disputed that she spent the money and lost the property, and without any authority or direction of the court.

In 1920, after the minor become 14 years of age, upon his request, the court removed his said mother as his guardian and appointed A. R. Hadley in her stead. On October 13, 1916, said Bella Campbell made and filed her first and final report as guardian, which covered the time from August 26, 1907, to October 12, 1916, in which she states that on August 26, 1907, the stock of merchandise was worth $4,383.10, and cash at that time was $1,534.83, and after deducting $1,972.04 as the one-third part of this value for her share, as the widow of Walter R. Campbell, deceased, she states the interest of the minor to be $3,945.28. Then, under the head of other items paid out, she makes the following statement:

"Subsequent to her appointment as such guardian, under the advice of her counsel, Barclay Morgan and W. E. Foster, she was induced to apply to the county court to be appointed administratrix of the estate of her husband, Walter R. Campbell, deceased, and was on the 13th day of January, 1908, duly appointed administratrix of the estate of Walter R. Campbell, deceased, by the Honorable J. L. Newhouse, judge of the county court of Okmulgee county. That she then filed an inventory of said estate with said court, and that afterwards and during a period of several years, and up until the 4th day of May, 1915, she acted as said administratrix and was at all times acting under the advice of her counsel, Barclay Morgan and W. E. Foster, this administratrix then acting as such sold and traded the stock of goods hereinbefore mentioned and used the said money in the bank for the purchase of real estate in the city of Henryetta, Okla., which property was subsequently lost by said Bella Campbell while acting under said advice as said administratrix.
Recapitulation.

"Total amount received_____$3.945.28
"Total amount paid out_____3,945.28
"Balance on deposit in bank_____Nothing."

She presented her report for approval and asked to be discharged. This report was contested by the Title Guaranty & Surety Company on the ground that none of the property of the estate ever passed into the hands of the guardian, but the same was subject to administration, and passed into the hands of the administratrix, and there was nothing for the guardian to report and there was no liability on the guardian for any of the property of the estate until the administration was closed and a decree of distribution rendered setting apart for the minor the part he was entitled to and to the widow the part she was entitled to.

On a trial of the issues, June 21, 1923, the

county court allowed the guardian $1,980 for support and maintenance of the minor without it being asked for, and required the guardian to account to her successor, A. R. Hadley, for $1,854. The Title Guaranty & Surety Company appealed to the district court, where the case was tried de novo November 4, 1925, on questions of both law and fact, and a judgment was rendered according to contentions of the contestants, the court holding that Bella Campbell, as administratrix and not as guardian, was indebted to said estate in the sum of $3,945,29, and order was accordingly made approving the report, discharging the guardian, and the contestant, as surety on the guardian's bond, and the guardian, Hadley, has appealed, and alleges several assignments of error. but his principal contention is that the order of the trial court is contrary to the law and the evidence.

The first question that engages our attention is whether or not Bella Campbell took possession of the property of the estate as administratrix or as guardian. It stands to reason that she could not have possession and administer the property in both capacities at the same time.

The record discloses that on January 25, 1908, she took possession of the money on deposit in the bank under an order of the county court, and on February 13, 1908, she made and filed an inventory of all the property of the estate, consisting of a business lot in Henryetta valued at $900, which she says cost $1,081.50 of money belonging to the estate; a stock of merchandise valued at $3,500, and cash on hand $845.50. She stated in her report, now under consideration, that the stock of merchandise was worth $4,883.10, and cash in the bank was, on August 26, 1907, $1,534.83, which shows considerable discrepancies in the two statements. Both statements referred to nearly the same period of time and both were verified. If we add $500, testified to as the indebtedness against the stock of goods, to the first statement, it will nearly harmonize the discrepancies, except as to the manner in which she took the value off of the stock of goods in the first statement and added it to the amount of cash in the bank. and in the second statement increased the value of the stock of goods and decreased the amount of cash in the bank. By counting in the $500, both statements are about correct, or at least consistent with each other. The testimony is not clear as to when she paid the $500 indebtedness. whether before the money in the bank was turned over to her by order

of the court, January 25, 1908. or after, but it is clear that the $500 was taken from the money left in the bank by the intestate. We think it is more reasonable to suppose it was not checked out and applied to the debts until the court ordered the bank to turn the money over to her, than that the bank allowed her to check it out before she was appointed the administratrix, and refused thereafter to turn over the rest of the money without the court's order. However, we do not think these discrepancies in the two accounts and the particular time the $500 indebtedness was paid material to turn the scale one way or the other, since the account was subject to correction by the court, and since there is no good reason for her not having credit for the $500 paid out on her account as administratrix, as the legality of the indebtedness is not disputed. Such discrepancies and irregularities cannot be used to impeach the necessity for the administration or the appointment of the administratrix, on a collateral attack, such as had been made on the administration proceedings here. The legality of the appointment being made, the necessity is presumed. and. as a matter of law. it was the duty of the administratrix to take possession of the personal property of the estate and administer the same, and the inventory filed and the statement made in the guardian's report, are not disputed, and from the record presented by the administration proceedings and the evidence of Bella Campbell, we think the fact is clearly established that she performed her duty in taking possession of all of the property in controversy as the legal administratrix. Sections 1197 and 1218, Compiled Statutes 1921.

The next question to engage our attention, as we view it. and the one decisive of the appeal, is, When does the administrator's duty cease to function and the guardian's duty of a minor heir commence? We think this question is comprehended and definitely answered by sections 1359. 1360. and 1382, Compiled Statutes 1921. This last section is very much to the point and provides:

"When the estate has been fully administered. and it is shown by the executor and administrator, by the production of satisfactory vouchers that he has paid all sums of money due from him. and delivered up under the order of the court, all the property of the estate to the parties entitled, and performed all the acts lawfully required of him, the court must make a judgment or decree discharging him from all liability to be incurred thereafter."

We think it is clear, under these sections,

that the administrator's authority over the property is not released except by order of the court, where there is a guardian of a minor heir, separate and apart from the administrator, and it would not only require an order of court to release the authority and duty of the administrator and the liability of his bondsmen over the property, or any part thereof, segregated in the interest of the minor heir, but the administrator would have to make an actual transfer of the same, under the court's order, from himself as administrator to the guardian of the minor, and the very instant the transfer is made the liability of the administrator and his bondsmen will cease with reference to the property so transferred, as his authority and duty are fulfilled in that particular, and at the same instant the liability of the guardian and his bondsmen commences for the particular property received.

There seems to be no controversy as to this rule, but the controversy arises when the same person is both administrator and guardian. We have examined the authorities on this situation, and, while there seems to be some conflict, the great weight of authority is to the effect that the only difference in this situation from the first stated is, that the order of the court, segregating the property or any part of it, for the use and benefit of the minor heir, and directing it to be paid over to the guardian, is sufficient, without formal transfer on the part of the administrator, to terminate his authority and end his duty, as well as the liability of his bondsmen as to the particular property so ordered, and at the same time fix the authority and duty of the guardian to take charge of such property and the liability of his bondsmen for the proper management of the same. The rule on this point is well stated in 28 C. J. 128, as follows:

"Where the same person acts as executor or administrator of an estate and also as guardian of the beneficiary, he holds the estate, including that to which the beneficiary may eventually become entitled, as executor or administrator, with the duties and liability as such, and does not hold any part of which as guardian until the beneficiary's share or portion is in some manner separated from the assets of the decedent's estate or placed to the account of such person as guardian."

To the same effect, and probably a little more pointed, is. substantially, the same rule stated in American Law of Administration by Woerner, vol. 2, section 1252, page 1370 (2nd Ed.) as follows:

"If the executor or administrator making final settlement is entitled to a distributive share in the estate or legacy in a fiduciary capacity, as guardian, curator, trustee, or the like, the order of distribution operates to vest the share or legacy in him in his new capacity; and it is a conclusive presumption of law, as against him, that he has done what he was by law required to do. But as against the executor, it is held that he remains liable as such until he is discharged, and directed to hold the remaining assets in his new capacity."

We think also the rule stated by the same author in vol. 1, page 581 (2nd Ed.) is applicable where the bondsmen of the administrator, or of the guardian, are to be made liable, and same is in accord with the above rules. The author says:

"It is sometimes of importance to ascertain in what capacity a principal, who has given bond as executor or administrator, and also as guardian, trustee, or other fiduciary, with different sureties, is chargeable with assets. In such cases it is to be remembered that, where the obligation to pay and the right to receive are united in the same person, the law operates the appropriation to the discharge of the debt. Hence, where an administrator, who is also guardian of a minor distributee, has made final settlement, and there is an order directing the payment of the distributive shares, such order will operate to charge him in his capacity as guardian and relieve his sureties on the administration bond; but until such final settlement is made, or the assets are accounted for, the former sureties remain liable, and where the share due the minors is not ascertained until after their majority, the debts become payable to them and not their former guardian, and the sureties on the administration bond are not discharged."

There are many cases cited from the various states of the Union in support of the above-quoted rules. They seem to be of almost universal application in probate cases and procedure throughout the United States. Plaintiff in error does not discuss the above rules or refer to them in his brief. As we understand his contention, it is this: He contends that where the same person is administrator of the estate and guardian of a minor heir of the same, when the debts against the estate are paid, that part of the personal property that would fall to said minor heir by a decree of distribution when made, passes directly from the trust of the administrator and the liability of his bondsmen to the trust of the guardian, and the liability of his bondsmen by operation of law without any order of court and before any decree of distribution is made. In support of this contention we are cited to several

cases, the first is First National Bank of Ft. Smith v. Thompson, 124 Ark 161, 186 S. W. 826, where the third paragraph of the syllabus states the facts as well as the law of the case as follows:

"Where defendant bank, in which the sum of $2,000 had been deposited in a condemnation proceeding, paid the money over to an administrator, who was at that time the curator of the estate of the owner of the land to whom the fund should have been paid, and he accounted for it in his settlement as administrator, it would be treated as a payment to him as curator, on the principle that where one acts in a dual capacity the exercise of his power is referable to the power possessed, and not necessarily to the capacity in which he purports to act, so that it was his duty to account for it in his right capacity; that is, on his bond as guardian, and the payment discharged the bank from further liability."

The principle applied here is in a case where the fund in controversy was received and reported as administrator, when, as a matter of fact, it belonged to the minor and should have been received by the curator and reported by him; that is to say, the fund did not belong to the estate represented by the administrator, and it was not his duty to receive it or report it in this capacity, but it belonged primarily to the estate represented by him as the curator. The principle applied to this state of facts is not applicable to the facts of the case at bar, or, if applied, is more favorable to defendant in error than to plaintiff in error.

The next case cited is In re McIntosh's Estate, Appeal of Executors, 158 Pa. 525, 27 Atl. 1042, and the first paragraph of the syllabus is quoted; but the facts in that case, authorizing the rule stated, are so different from the facts in the case before us. that the same rule is not applicable here.

The next case cited is that of Loftin v. Cobb et al., 126 N. C. 58, 35 S. E. 230, and plaintiff in error quotes the holding of this case, to the effect that a guardian and his bondsmen are liable for all moneys collected and for all that ought to have been collected, and that the trust imposed must be faithfully performed. The court held that the guardian should have collected from himself as administrator any balance in the latter's hand due his ward. It may be said that this holding is universally applicable where there is any amount due the minor, but it is without force in the instant case for the reason nothing was due the minor ward without an order of the court, or until a decree of distribution was made in the administration case.

The case of Karr's Administrator v. Karr, 6 Dana, 3, from the Supreme Court of Kentucky, is cited and quoted from by plaintiff in error, to the effect that where the same person is both guardian of the minor heir and administrator of the decedent's estate, any funds held by the administrator, not necessary to the administration of the estate, must be deemed as funds in the hands of the guardian, for which he and his bondsmen as such are liable. The rule announced in the case was as follows:

"Where the same person is executor or administrator and guardian of a distributee. and makes no settlement, or election, showing in which capacity he holds the funds, he shall be presumed, after a reasonable time for settling the estate has elapsed. to hold them—or at least the portion not necessary for the payment of debts, as guardian: for it would be his duty as guardian, if another was administrator, to coerce a settlement, obtain the ward's estate, and make it productive."

It will be observed that the presumption mentioned in the rule is based upon the absence of definite acts showing in what capacity the administrator held the funds. This rule cannot be applied to the case before us. for the reason the record shows clearly that Bella Campbell held all funds in controversy and used them as administrator of the estate and not as guardian of the minor child.

Another case cited is that of Seegar v. State, 14 Am. Dec. 265, in which the rule is stated, in general. that upon rendition of his final account as administrator any fund in his hands. by operation of law, would be transferred to him as guardian. That is, it does not take a formal transfer of the funds, but the approval of the final account, and setting apart the funds in the hands of the administrator to the minor heirs, makes the transfer and lets in the presumption. There is a parenthesis in the court's statement that says, in substance, that even funds in the hands of such administrator, prior to his final account. may be held by him as guardian of the minor heir instead of as administrator of the decedent's estate. Any act of segregation and apportionment of a particular fund or amount to the minor heir. approved and ordered by the court, would be sufficient to satisfy this parenthesis. This case is not out of accord with the rule contended for by defendant in error.

The last case cited is that of Weir v. The People, 78 Ill. 192, where it was held that the executor of the estate of the deceased heir and his bondsmen were liable for the funds

that came into his hands as administrator of the estate of the intestate, after the debts were paid and without a final account or decree of distribution. This case seems to support plaintiff in error's contention, but it is the only case pointed out to us, that does support his contention, and we are unable to find any other case on record that goes this far. We think our construction of the Oklahoma statutes, supra, is supported by the great weight of authority, and while we think that Bella Campbell was negligent in her duty as guardian, yet, since the record shows that she took possession of all the property of the decedent's estate as administratrix, as it was her duty to do, and thereafter mismanaged it and lost it, and no segregation was ever made setting apart any of it for the minor heir for whom she was guardian, she and her bondsmen as administratrix must be held liable for the property of said estate, and not she and her bondsmen as guardian of the minor heir.

Therefore the judgment of the district court is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 23 C. J. p. 1170; §§386, 387: 24 C. J. p. 1062. §2543 (Anno). (2) 24 C. J. p. 52, §469 (Anno). (3) 28 C. J. p. 1289, §485.