Linda WILSON, Plaintiff–Appellant,

v.

Matthew KANE, Jr., Defendant–Appellee.

No. 76587.

Supreme Court of Oklahoma.

May 11, 1993.

Gary L. Bracken, Ponca City, for plaintiff-appellant.

Jesse J. Worten, III, John M. Keefer, Brewer, Worten, Robinett, Johnson, Worten & King, Bartlesville, for defendant-appellee.

OPALA, Justice.

The dispositive question here is whether Linda Wilson's [plaintiff's or Wilson's] claim against Matthew Kane, Jr. [Kane], personal representative of her uncle's estate, for his alleged "conversion" of certain nonprobate assets by mismanagement *could have been litigated in probate.*[1] We answer this question in the negative. The remedial deficiency of probate procedure to accommodate Wilson's claim prevents the probate adjudications on which Kane relies from having res judicata (also known as claim preclusion) effect.[2]

## I.

## THE ANATOMY OF LITIGATION

### A.

### THE PROBATE PROCEEDING

Wilson's uncle [the uncle] bought certificates of deposit [certificates] for $130,-000.00, payable to Wilson upon his death. He also named Wilson a beneficiary of his will and joint tenant in a checking account. When the uncle died, the certificates were delivered to Kane, the estate's personal representative. Kane allowed them to mature; then he cashed the certificates and deposited the proceeds in the estate's non-interest bearing account. Over a year after her uncle's death, Wilson learned from the bank's president that *she was the certificates' POD (payable on death) beneficiary.*

When Wilson sought in probate to recover the certificates' proceeds, the estate contested her claim. After a hearing in probate, the judge (1) *decreed* Wilson to be the owner of the certificates and of a joint checking account and (2) *ordered* the proceeds from the certificates and from the account to be turned over to her.[3] A second probate order approved a settlement that divides the checking account proceeds between Wilson and her two cousins (beneficiaries under the uncle's will) and made

---

**1.** Wilson characterizes her theories of recovery as "*negligence, conversion and breach of fiduciary duty* against a personal representative of an estate in connection with his handling of certificates of deposit that belonged to the plaintiff and were not properly part of the estate." [Emphasis supplied.] *Whether Wilson's claim is actionable or whether her evidence will support the quest for relief under any of these theories is not before us today. For the sake of simplicity we refer to Wilson's claim as one for Kane's alleged*

"conversion" of non-probate assets by mismanagement.

**2.** For an explanation of the effect of res judicata, *see* part II and *infra* note 22.

**3.** The pertinent terms of the May 18, 1989 probate order provide that five certificates of deposit and a checking account, *together with accumulated interest,* "should be set over to Linda Wilson as her property separate and apart from the Estate of Floyd C. Morris." The certificates

unappealable the earlier probate order.[4] The certificate proceeds went to Wilson. Her lawyer *approved Kane's final account;* while sitting in probate the judge *issued a decree of distribution* and *discharged* Kane from his duties as the estate's personal representative.[5]

## B.

### WILSON'S CLAIM FOR KANE'S ALLEGED "CONVERSION" OF NONPROBATE ASSETS BY MISMANAGEMENT

Later Wilson brought this action against Kane. She contends his mismanagement of her certificates (nonprobate assets) cost her not only ·*interest* that the certificates could have earned while they languished in the estate's non-interest bearing account but a large *attorney's fee as well.*[6] The trial court gave summary judgment[7] to Kane, believing that res judicata[8] bars Wilson's claim because it could have been litigated (a) in probate during the dispute over the certificates' ownership or (b) as a challenge to the decree of distribution or to the personal representative's discharge. Wilson appealed;[9] the Court of Appeals affirmed the trial court's summary judgment and we granted certiorari.[10]

## C.

### THE CONTROVERSY

◼ *Wilson* contends the doctrine of res judicata does *not* bar her claim against Kane for converting nonprobate assets and urges that the probate order that discharges him from his duties as the estate's personal representative does not exonerate Kane from liability for mismanagement of the certificates. According to *Kane,* since only one controversy[11] arises from his dealings with the certificates, *any and all recovery to which Wilson might have been entitled* could have been litigated in probate during the dispute over the certificates' ownership. Kane believes that his discharge in probate (as personal representative of the uncle's estate) fully absolves him of any responsibility to Wilson.

## II.

### WILSON'S CLAIM FOR KANE'S ALLEGED CONVERSION OF NONPROBATE ASSETS BY MISMANAGEMENT LIES DEHORS THE ADJUDICATIVE RANGE OF A COURT SITTING IN PROBATE

◼ Wilson's claim for alleged conversion of nonprobate assets by mismanage-

---

earned no interest; *Kane did not reinvest them after their maturity.*

4. While sitting in probate the judge on May 31, 1989 approved the parties' posthearing settlement of their dispute over title to the certificates and to the bank account.

5. Both the final account's approval and the personal representative's discharge were pronounced July 31, 1989 and memorialized August 1, 1989.

6. Wilson also contends she was forced to *sell her house at a loss* because she needed money while the dispute was pending. She seeks *punitive* as well as *actual damages.*

7. Summary judgment for the defendant was pronounced September 17, 1990 and memorialized October 10, 1990.

8. For an explanation of the effect of res judicata, *see* Part II and *infra* note 22.

9. A timely petition in error was filed on November 6, 1990 *after* the trial court's October 23, 1990 denial of Wilson's motion for new trial.

10. The February 14, 1992 'affirmance of the *nisi prius* decision by a lawyer-staffed panel of the Court of Appeals was followed by Wilson's timely petition for certiorari on February 28, 1992. We granted certiorari on July 8, 1992.

11. Kane points to *Retherford v. Halliburton Co.,* Okl., 572 P.2d 966, 968–969 (1978), which explains Oklahoma's *transactional approach* to the concept of a cause of action. *It is not applicable here primarily because of statutory limitations on the probate's remedial range. See* our discussion in Part II.

The general rule against splitting a cause of action recognizes an exception where, as here, *"formal barriers existed against full presentation of [the] claim in [the] first action." See* RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(c) and cmt. c (1982).

ment, pressed for the first time in this action, is fit for the district court's process of ordinary judicature, but not for resolution in probate.[12] A probate proceeding moves along a procedural track vastly different from that followed by a regular "action" upon a claim. The latter is governed by the Pleading Code [13] and is regulated by the rules of practice applicable to the ordinary process of adjudication. Before the Judicial Article of the Oklahoma Constitution [14] and the provisions of § 91.-1 [15] became effective on January 13, 1969, the remedial track for probate had its point of inception in the since-defunct county court.[16] Although probate *now* begins and ends in district court, *interdocket remedial boundaries survive.* Probate is a special

**12.** We do not address the question whether Wilson's *certificate ownership claim* was fit for probate judicature; *whether Wilson had standing in probate to challenge the estate's title to the certificates is not before us today. See in this connection Matter of Adoption of B.K.J.,* Okl., 639 P.2d 611, 613–614 (1982); *In re Griffin's Estate,* 199 Okl. 676, 189 P.2d 933, 935 (1947). *But see Lowrance v. Patton,* Okl., 710 P.2d 108, 112 (1985); *Estate of Kizziar,* Okl., 554 P.2d 791, 792–793 (1976); *Taliaferro v. Reirdon,* 186 Okl. 603, 99 P.2d 522, 524 (1940).

**13.** 12 O.S.Supp.1985 § 2001. The pertinent terms of § 2001 provided:

"*The Oklahoma Pleading Code governs the procedure in the district courts of Oklahoma in all suits of a civil nature* whether cognizable as cases at law or in equity *except where a statute specifies a different procedure....*" [Emphasis provided.]

The notion of *multiple procedural tracks for some classes of district court proceedings* which cannot be accommodated by the Pleading Code is *not new* to the body of our procedural law. *See, e.g.,* the Uniform Adoption Act, 10 O.S.1981 §§ 60.1 *et seq.;* the provisions of 10 O.S.Supp. 1988 §§ 1101 *et seq.* (amended by Okl.Sess.Laws 1990, c. 51, Okl.Sess.Laws 1990, c. 302, § 1 and Okl.Sess.Laws 1991, c. 335 §§ 1, 36), commonly known as the "Juvenile Code" or "Children's Code"; statutes governing filiation proceedings, 10 O.S.Supp.1987 §§ 70 *et seq.* (amended by Okl.Sess.Laws 1989, c. 198, § 1 and Okl.Sess. Laws 1991, c. 71, § 1); condemnation proceedings for highways, 69 O.S.1981 § 1708 (amended by Okl.Sess.Laws 1991, c. 175, § 4); condemnation proceedings for railroads, 66 O.S.1981 §§ 51 *et seq.;* and of course, *probate procedure,* 58 O.S.1981 §§ 1 *et seq.* (amended by Okl.Sess. Laws 1989, c. 276, § 1); *Williams v. Mulvihill,* Okl., 846 P.2d 1097, 1102 n. 14 (1993); *Board of Law Library Trustees v. State,* Okl., 825 P.2d 1285, 1288 n. 11 (1992); *Court Fund of Tulsa County v. Cook,* Okl., 557 P.2d 875, 877–878 (1976).

Our citations are to enactments in effect *when the probate orders invoked here were rendered.*

**14.** Article 7 is the Judicial Article. Art. 7, § 1, Okl. Const., provides in pertinent part:

"*The judicial power of this State shall be vested in ...* a Supreme Court [and] *... District Courts....*" [Emphasis supplied.]

Art. 7, § 7(a), Okl. Const., provides in pertinent part:

"The District Court shall have *unlimited original jurisdiction of all justiciable matters,* except as otherwise provided in this Article....*" [Emphasis supplied.]

Article 7 was ratified in 1907. Its repeal and the enactment of what is now Article 7 was proposed by Laws 1967, p. 698, H.J.R. No. 508 and adopted at an election on July 11, 1967.

**15.** 20 O.S.1981 § 91.1 (adopted *verbatim* from Okl.Sess.Laws, 1968, c. 162, § 1, eff. Jan. 13, 1969). The pertinent terms of § 91.1 are:

The *District Courts* of the State of Oklahoma are the *successors to the jurisdiction of* all other courts, including *... the County Courts....*" [Emphasis supplied.]

**16.** Art. 7, §§ 12–17, Okl. Const. (repealed in 1967, eff. Jan. 13, 1969), provided:

"The County Court, co-extensive with the county, shall have *original jurisdiction in all probate matters....*" [Emphasis provided.]

Art. 7, § 13, Okl. Const. (repealed in 1967, eff. Jan. 13, 1969), provided:

"The County Court shall have *the general jurisdiction of a Probate Court.* It shall *probate wills,* appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; *grant letters testamentary* and of administration, *settle accounts of executors,* administrators, and guardians; *transact all business appertaining to the estates of deceased persons,* minors, idiots, lunatics, persons non compos mentis, and common drunkards, *including the sale, settlement, partition, and distribution of the estates thereof.* * * * *" [Emphasis provided.]

*See Kizziar, supra* note 12 at 792. For the pertinent provisions of the present Article 7, *see supra* note 14. For examples of *county court* cases, *see Cassina v. Jones,* Okl., 340 P.2d 482, 484 (1959); *In re Johnson,* 72 Okl. 174, 179 P. 605, 607 (1919).

statutory proceeding.[17] *Its mainstream* [18] *issues, procedural stages, and special statutory remedies remain the same as they were before 1969. The law confines them to: (1) ascertaining whether decedent died testate or intestate, and if testate, (2) what testamentary disposition, if any, may be admitted to probate, (3) the administration of the estate's assets and (4) the final account and distribution.*[19]

*Wilson's claim for alleged conversion of nonprobate assets (later adjudged as her property) does not fit within probate's statutorily limited framework.*[20] The relief she seeks (interest and other out-of-pocket losses) is for Kane's alleged mismanagement of *her personal property, not* of that which belongs to *the estate. Demands for a money judgment for one's dealings with assets dehors the estate are not within the limited arsenal* of special remedies affordable in probate.[21]

Under the doctrine of res judicata,[22] a final judgment on the merits of an action bars the parties from relitigating not only the adjudicated claim but also any theories or issues that were actually decided or *could have been* decided in that action.[23] For probate adjudications the effect of *res judicata* is circumscribed by the reality of our *interdocket boundaries* [24] and by the statutes that narrowly craft probate as a *special remedy. Where, as here, the claim sought to be litigated lay dehors probate and could not have been accommodated by its restricted framework, res judicata effect may not be accorded to the earlier orders in probate.* In short, Wilson's claim survives as a viable demand and the summary judgment for Kane cannot stand.

17. 58 O.S.1981 §§ 1 *et seq.* (amended by Okl. Sess Laws 1989, c. 276, § 1); *Williams, supra* note 13 at 1102; *Kizziar, supra* note 12 at 792. The pertinent terms of § 1 provided that "the district court has probate jurisdiction ... which must be exercised *in the cases and in the manner prescribed by statute....*" [Emphasis provided.]

18. *Mainstream* probate issues are not the only ones limited by statute; *ancillary* proceedings in probate are limited as well. *See*, e.g., 58 O.S. 1981 § 339, which provides that "[w]hen a [creditor's] claim is rejected [in probate] the holder may bring suit as *an ancillary proceeding in the probate case* or as an independent action...." [Emphasis provided.]

19. *See* the probate procedure, 58 O.S.1981 §§ 1 *et seq.* (amended by Okl.Sess.Laws 1989, c. 276, § 1); *Williams, supra* note 13 at 341.

20. For an explanation of the kind of *mismanagement claim* that is *fit for probate, see* Part III.

21. *See* 58 O.S.1981 §§ 1 *et seq.* (amended by Okl.Sess Laws 1989, c. 276, § 1).

22. The RESTATEMENT OF JUDGMENTS now speaks of *res judicata* as "*claim preclusion*". *See* RESTATEMENT, *supra* note 11 at § 24; *Veiser v. Armstrong,* Okl., 688 P.2d 796, 800 n. 8 (1984); *Oklahomans for Life, Inc. v. State Fair of Oklahoma,* Okl., 634 P.2d 704, 706–707 (1981). *See also Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–416, 66 L.Ed.2d 308 (1980); *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 80, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *United* States v. Mendoza, 464 U.S. 154, 157, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984).

23. *Veiser, supra* note 22 at 800 n. 9; *see Panama Processes v. Cities Service Co.,* Okl., 796 P.2d 276, 283–284 n. 27 (1990). *See also Allen, supra* note 22, 449 U.S. at 94, 101 S.Ct. at 414; *Cromwell v. County of Sac,* 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195, 197 (1877).

Wilson argues that "the trial court erred in ruling that the doctrine of res judicata *or collateral estoppel* barred [her] claim." *The doctrines of res judicata and collateral estoppel are not interchangeable. See Panama Processes, supra* at 283–284 n. 27.

The RESTATEMENT OF JUDGMENTS describes *collateral estoppel* as "*issue preclusion.*" *See* RESTATEMENT, *supra* note 11 at § 27; *Veiser, supra* note 22 at 799 n. 7; *Oklahomans for Life, supra* note 22 at 706–707. *See also Allen, supra* note 22, 449 U.S. at 94, 101 S.Ct. at 415; *Migra, supra* note 22, 465 U.S. at 76, 104 S.Ct. at 894; *Mendoza, supra* note 22, 464 U.S. at 157, 104 S.Ct. at 571. Under *issue preclusion,* once a court has decided an *issue of fact or law* necessary to its judgment, *that issue may not be relitigated between the same parties or their privies in a suit on a different cause of action. Veiser, supra* note 22 at 800 n. 9. *See Allen, supra* note 22; *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979);

*No issue in Wilson's claim was ever presented at any stage of the earlier proceeding in probate; collateral estoppel is hence clearly inapplicable to bar any of these issues.*

24. For an explanation that a cause may sometimes be restricted by a special proceeding's remedial range, *see supra* note 11. For exam-

## III.

### WILSON'S FAILURE TO CHALLENGE IN PROBATE EITHER THE DECREE OF DISTRIBUTION OR KANE'S DISCHARGE AS PERSONAL REPRESENTATIVE DOES·NOT BAR HER CLAIM AGAINST HIM FOR ALLEGED CONVERSION OF NONPROBATE ASSETS BY MISMANAGEMENT

Had Wilson attempted to cast her demand for alleged conversion of nonprobate assets as an objection to the decree of distribution or to the personal representative's discharge, as Kane urges she should have done, the court below would have been compelled to declare her claim irremediable in probate. It would have been indeed an act of supererogation for Wilson to have pressed a demand for which no redress was affordable.

 A personal representative is responsible for the faithful administration of *the estate's property*[25] and may be surcharged for mismanagement of *estate assets.*[26] Sitting in probate a judge can require a personal representative to account, in his fiduciary capacity, *only for funds and property* coming into his hands which are *assets of the estate.*[27]

ples of the court's *interdocket boundaries, see supra* note 13.

25. *Campbell v. Campbell,* 120 Okl. 294, 251 P. 502, 504 (1926).

26. *In re Hanson's Estate,* 77 S.D. 474, 93 N.W.2d 606, 612-613 (1959).

27. *Boudinot v. Locust,* 55 Okl. 662, 151 P. 579, 582 (1915), aff'd. on rehearing 155 P. 698 (1916); *Judge v. Tyson,* 42 Ala. 401 (1868). The dispositive question is whether the personal representative was *entitled to receive the money or property in his capacity as administrator.* If *not,* the judge sitting in probate has *no power to require him to account* for those assets. An order *requiring the personal representative to account* might be condemned as *void.* An *exception* to this rule may apply when a judge mistakenly *orders* the administration of a nonprobate asset *under the erroneous belief it belonged to the estate. Boudinot, supra* 151 P. at 582.
 *The general rule, rather than the exception, governs this case. The certificates Wilson claimed as her own were never judicially declared as probate assets.*

 Wilson does *not* seek to hold the personal representative liable for *wrongful administration or mismanagement of the estate's assets.*[28] Rather, the redress sought here is for alleged mismanagement of her *nonprobate assets.* She has no quarrel with the decree of distribution; her demand may *not* be· viewed as a collateral attack on that decree. *Since Wilson's claim against Kane is litigable solely dehors probate, she had no duty to call it to the attention of the judge in probate by interposing a challenge to the final decree or to Kane's discharge.*

## SUMMARY

Wilson's claim cannot be barred for her failure to make an irremediable demand. Her claim for Kane's alleged conversion of nonprobate assets by mismanagement clearly was not litigable in probate. Interdocket boundaries and narrowly drawn statutory remedies limit the remedial range of probate. They require that Wilson be allowed to press her claim in an ordinary action dehors probate. *Neither res judicata nor issue preclusion bars this action. Summary judgment for Kane cannot stand.*

28. The trial judge *mistakenly* viewed Wilson's claim as an attack on the decree of distribution and on the personal representative's administration of the estate *in probate.* He rested summary judgment for Kane upon (1) the text of 58 O.S.1981 § 632, which provides that the final decree is "*conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal,*" (2) the terms 58 O.S. 1981 § 691, which provide that when the personal representative has "performed all the acts lawfully required of him, the court must make a judgment or decree *discharging him from all liability to be incurred thereafter*" and (3) the teachings of *O'Neill v. Cunningham,* 119 Okl. 157, 244 P. 444, 447 (1926) and *Coyne's Estate,* 103 Okl. 279, 229 P. 630, 633 (1924), which hold that a personal representative is *protected from personal liability by the decree of distribution if he has acted reasonably and in good faith in the disbursement of money pursuant to the decree.* [Emphasis provided.]
 Wilson's claim is *not* barred by the adjudications made in probate; her quest for monetary recovery could not have been redressed in that special proceeding.

ON CERTIORARI PREVIOUSLY GRANTED, THE COURT OF APPEALS' OPINION IS VACATED; THE TRIAL COURT'S SUMMARY JUDGMENT IS REVERSED AND CAUSE REMANDED.

HODGES, C.J., LAVENDER, V.C.J. and SIMMS, HARGRAVE, OPALA, ALMA WILSON and KAUGER, JJ., concur.

SUMMERS, J., concurs in result.

WATT, J., dissents.

WATT, Justice, dissenting.

I dissent because I believe the majority has failed to give effect to the changes in the jurisdiction of district courts brought about by the court reform amendments to the Oklahoma Constitution in 1967. Okla. Const. Art. 7 § 7(a) provides in material part:,

> The District Court shall have unlimited original jurisdiction of all justiciable matters, except as otherwise provided in this Article

. . . . .

Although the district court was acting within its probate docket, I think it inescapable that it had jurisdiction in the probate proceeding to consider Wilson's tort claims against Kane. I would therefore hold that Wilson's tort action was barred by *res judicata.*

The majority holds that Wilson's tort claim "is [not] fit for ... resolution in probate," but carefully avoids holding that the first district court lacked jurisdiction in the probate action to dispose of all matters in dispute between Wilson and Kane. I disagree with the majority's refusal to deal with the jurisdictional issue. Disputes over the jurisdiction of district courts acting in their probate capacity have created much confusion in the Oklahoma law since 1969. By refusing to deal with this issue, the majority leaves an already murky area more unsettled.

*Historical Background*

In 1967 the people reformed the Oklahoma court system by amending the Judicial Article of the Oklahoma Constitution to grant "unlimited original jurisdiction" to the district courts and eliminate the other courts that had existed since statehood. Id., Article 7, § 7(a). The legislature amended the statutes to reflect these changes in legislation that became effective in January 1969.[1]

Before court reform, the jurisdiction of county courts was strictly limited. Any decision of a county court in a probate matter was appealable to the district court for trial *de novo.*[2] The county court lacked jurisdiction to decide title to property in non probate actions.[3]

Court reform was thought to have eliminated confusion over competing jurisdiction of the sort that arose in *State v. Lohah,* 434 P.2d 928 (Okla.1967). There, we issued a writ of prohibition to resolve a dispute between a district court, sitting in a divorce action, and a county court, sitting in a dependant and neglected child matter. Professor George B. Fraser predicted the effect of court reform in an article he wrote about the changes in the Oklahoma Law Review:

> Since there will be only one trial court of general jurisdiction the problem of which court has jurisdiction of an action will no longer exist and *conflicts between courts within a county will no longer be possible* .... [Emphasis added.]

Fraser, *Oklahoma's New Judicial System,* 21 Okla.L.Rev. 373, 374 (1968).

We echoed Professor Fraser's sentiments in the first case in which we addressed the effect of § 7(a), *In re Estate of Faulkner,* 504 P.2d 875, 877 (Okla.1972). In *Faulkner,* this Court held:

> The District Court is no longer limited by the rule that in probate matters its juris-

1. 20 O.S. 1991 § 91.1 provides in material part:
 The district courts of the State of Oklahoma are the successors to the jurisdiction of all other courts, including ... the County Courts ... Wherever reference is made in the Oklahoma Statutes to any of the above courts or to

the judge thereof, it shall be deemed to refer to the district court or a judge thereof ...

2. Okla. Const. Art 7 § 16 (1961).

3. Okla. Const. Art. 7 § 12 (1961).

diction is appellate only and embraces only the jurisdictional scope of a county court sitting in probate matters.

We have recognized the effect of § 7(a) in two recent opinions. In *Frazier v. Bryan Memorial Hosp. Authority*, 775 P.2d 281, 285 (Okla.1989), we said, "The district court stands in our constitutional order as a judicial tribunal of *unlimited* jurisdiction." [Emphasis as in the original.] In *Eskridge v. Ladd*, 811 P.2d 587, 588 (Okla.1991), we said that, under Article 7, § 7(a) of the constitution, the district court is *"omnicompetent."* [Emphasis added.]

In *Duke v. Nelson*, 536 P.2d 412, 414 (Okla.App.1975), the Court of Appeals took a position contrary to *Faulkner*, without citing it. There, the court said:

> The new Judicial Article [20 O.S. 1981 § 91.1] did not abolish nor alter the distinction between various types of court actions whether established by common law or statutes. Probate proceedings are strictly statutory. The purview of probate proceedings in Oklahoma will be the same in the ·District Court as they were in the County Court unless changed by statute.

The *Duke* court's language was not only a misstatement of the law, it was unnecessary to the Court of Appeals' holding. In *Duke*, defendant had demurred to plaintiff's petition on the ground that another action was pending. The Court of Appeals held that the trial court had improperly sustained defendant's demurrer because plaintiff's petition did not allege this fact. The Court of Appeals in *Duke* not only ignored *Faulkner* but relied on *In re Griffin's Estate*, 199 Okla. 676, 189 P.2d 933 (1947), *which was decided before court reform.*[4]

The next year, we decided one case that was in line with *Faulkner*, and another that followed *Duke*. *In re Woodward*, 549 P.2d 1207 (Okla.1976), apparently followed *Faulkner*, and *In re Estate of Kizziar*, 554 P.2d 791 (Okla.1976) cited with approval

the unfortunate misstatement of the law from *Duke*.

*In re Woodward*, 549 P.2d 1207 (Okla.1976), was an action to determine the death of a joint tenant and to terminate the joint tenancy. Defendants, other relatives of the decedent, filed a counterclaim in which they contended the plaintiffs had secured the joint tenancy deed through fraud and undue influence. The trial court tried the matter and found for plaintiffs and against defendants on defendants' counterclaim. Apparently other parties were involved in the action who were not heirs or devisees of the decedent. By affirming the trial court, we impliedly recognized the power of the district court to try title to real property while sitting in its probate capacity, although some of the parties were not heirs.

*In re Estate of Kizziar*, 554 P.2d 791 (Okla.1976) started out as the probate of the estate of an intestate. During his lifetime, decedent had bought certificates of deposit on which he named others as joint tenants. The surviving joint tenants in the certificates of deposit objected to the personal representative's inventory, and the trial court held an evidentiary hearing to decide whether the estate or the surviving joint tenants owned the certificates. In the final decree, the trial court held that the estate, not the surviving joint tenants, owned the certificates of deposit. The surviving joint tenants appealed. This Court cited *Duke* with approval, and held that the trial court had lacked jurisdiction to decide the ownership of the certificates of deposit. As had *Duke*, *Kizziar* relied on cases decided *before* court reform. *Kizziar* recognized the exception created by *In re Griffin's Estate*, 199 Okla. 676,· 189 P.2d 933 (1947). *Griffin* held that a probate court had jurisdiction to try title if the dispute is between those claiming as heirs or devisees of the decedent. In *Kizziar*, however, we held that the *Griffin* exception did not apply because, in *Kizziar*, the surviving joint tenant was a stranger to the estate.

---

**4.** In *Griffin*, we held that a probate court had jurisdiction to try title if, but only if, all contestants to the property were claiming as heirs or devisees of the decedent.

In the seventeen years since it was decided, this Court did not cite *Kizziar,* until the majority did so today. It has been cited but twice by the Court of Appeals, in *Matter of Lindell's Death,* 573 P.2d 716 (Okl. App.1977), and *Matter of Estate of Jech,* 701 P.2d 428 (Okl.App.1985). Both opinions were justifiably critical of *Kizziar.* In *Lindell,* the Court of Appeals properly concluded that it was bound by *Kizziar,.* and *Duke,* but suggested their holdings were inconsistent with court reform:

> ... *We can see no law or logical reason why a district court in Oklahoma cannot determine all of the issues in a case without the necessity of at least two separate actions being filed* ...

As we see it, the only possible rationale for the cases which conclude that the district court must sit in a dual capacity—that is, hear two separate lawsuits—is because originally there were two separate courts which now have become one.... *This seems to go against the very letter and spirit of the statutory court reform in Oklahoma.* [Emphasis added.]

*Lindell,* Id. 573 P.2d at 720. In *Jech,* the Court of Appeals after noting that it was bound by *Kizziar* and *Duke,* quoted *Lindell* with approval.

### Resolving the Confusion

Today the majority has failed to resolve the confusion, spawned by *Kizziar* and *Duke,* that has existed with respect to the jurisdiction of district courts in probate matters. *Kizziar* relies on a misstatement in *Duke* and misapplies the law. I would overrule *Kizziar.* Wilson submitted herself to the jurisdiction of the first district court by claiming the certificates of deposit in that forum. She should have been required to submit all claims arising from the central facts of the transaction there. Subjecting Kane to a second suit arising out of the same transaction, because Wilson's first suit was assigned a probate number, is unfair and not supported by law.

The majority cites *Kizziar,* but avoids applying it by saying that the jurisdiction of the court in the Morris probate to decide that matter is not before this Court. I believe the jurisdiction of the probate court is properly before the Court. If the district court had jurisdiction over the parties and the subject matter of Wilson's claim to the certificates, how could it lack jurisdiction over the remaining issues arising from the transaction between Wilson and Kane? On the other hand, if the trial court in the Morris probate lacked jurisdiction to consider who owned the certificates of deposit, then the judgment in Wilson's favor was a nullity. Thus, Wilson will be required upon remand of this action to again prove that she owned the Certificates. Wilson will have to win on the ownership issue a second time to entitle herself to damages. Leaving the critical question of the first district court's jurisdiction unanswered virtually guarantees that we will see this case again.

Believing as I do that *Kizziar* should be overruled, and that we should hold the trial court had jurisdiction over Wilson's claim in the Morris probate matter, her claim in this action was barred by *res judicata.* Under *Mann v. State Farm Mutual Auto. Ins. Co.,* 669 P.2d 768 (Okla.1983), and *Retherford v. Halliburton Company,* 572 P.2d 966 (Okla.1977), a cause of action includes all theories arising from a single occurrence or transaction. That is the case here.

The majority repeatedly uses the term "probate judge" as if a probate judge were somehow different from other district judges. One searches the constitution and statutes in vain for the term "probate judge." The constitution and statutes do not mention "probate judge." Instead, they create a single district court that is "omnicompetent." The majority's holding to the contrary is insupportable.

The trial court and the Court of Appeals correctly decided the matter. The failure of the majority to overrule *Kizziar* regrettably deprives the people of this state of a significant amount of the reform they thought they were getting when they passed Court Reform in 1967. The majority's pronouncement is unsupported by ei-

ther "law or logical reason" and goes "against the very letter and spirit of the statutory court reform in Oklahoma." *Lindell,* Id. 573 P.2d at 720. Unfortunately, the confusion over the jurisdiction of district courts sitting in probate matters to try title to property that has existed since *Kizziar* still reigns. I dissent.